## DAVIS V. RAILWAY.

Decided April 5, 1890.

1.  *Act of February 3, 1875—Killing by railway train—Repealed by act of
    March 6, 1883.   (Mansf. Dig., secs. 5225-6.)*

    Section three of the act of February 3, 1875 (Acts 1874-5, p. 133), pro-
    viding a special right of action where a person is killed by a railway
    train, has been repealed by the general act of March 6, 1883 (Mansf.
    Dig., secs. 5225 and 5226).

2.  *What actions lie for wrongs resulting in death—Mansf. Dig., sec. 5223—
    Not repealed by secs. 5225-6, ib.*

    The act of 1838 (Mansf. Dig., sec. 5223), which provides that an action
    for wrongs done to the person of another may, after his death, be
    brought by his personal representative for the benefit of his estate, is
    not repealed by the act of 1883 (Mansf. Dig., secs. 5225-6), which

| | |
|---|---|
| 53 | 117 |
| 53 | 466 |
| 53 | 117 |
| 54 | 132 |
| 54 | 360 |
| 54 | 394 |
| 53 | 117 |
| 55 | 466 |
| 53 | 117 |
| 56 | 238 |
| 53 | 117 |
| 59 | 222 |
| 53 | 117 |
| 60 | 619 |
| 53 | 117 |
| 68 | 3 |
| 68 | 4 |
| 68 | 320 |
| 53 | 117 |
| e69 | 292 |
| 53 | 117 |
| 71 | 43 |
| e71 | 58 |
| 53 | 117 |
| 73 | 55 |
| 76 | 557 |
| 53 | 117 |
| f78 | 261 |
| f82 | 15 |
| f82 | 16 |
| 53 | 117 |
| f 84 | 388 |
| 53 | 117 |
| 186 | 246 |
| 87 | 69 |
| 53 | 117 |
| f90 | 412 |
| f90 | 480 |
| f90 | 481 |

provides for an action by the personal representative for the benefit of the widow and next of kin for pecuniary loss sustained by the death of a person caused by the wrongful act, neglect or default of another. Both actions may proceed *pari passu*, and a recovery in one action will not bar a recovery in the other.

3. *Loss of minor's services—Parent's right of action—Measure of damages.*

The common law right of action of a parent for the loss of his minor child's services, caused by injuries inflicted by another which result in death, has not been abolished; but the recovery is confined, in point of time, to the value of such services during the period intervening between the injury and death.

4. *Risks of employment—Latent danger—Inexperienced servant.*

A knowledge of facts which involve a latent danger does not imply a knowledge of the danger itself; thus, where a young and inexperienced servant employed in coupling cars has his foot caught by an unblocked guard rail, and is run over and killed by a moving train, an instruction that his knowledge of the existence of the unblocked rail implied a knowledge and assumption of the attendant danger, was erroneous.

5. *Charge to the jury—How prepared.*

While it is the duty of counsel to present their prayers for instructions, they are advisory merely; and the court should embody no more than their substance in a connected and consistent charge which contrasts the issues on each phase and presents the whole law of the case as emanating from the court without apparent instigation from either side.

APPEAL from *White* Circuit Court.

M. T. SANDERS, Judge.

*Sanders & Watkins* for appellant.

1.   The first cause of action was based upon sec. 5223, Mansf. Dig.

The court ruled that only one cause of action accrued for an injury resulting in death, and the later act of 1883, giving the cause of action set out in sections 5225 and 5226, repealed the former action given by section 5223. We submit that this was error.

The cause of action described in section 5223 is simply the cause of action which accrued to the deceased by reason

of the injury, and covered only the period from the injury to the death of the injured party. The additional cause of action covers the damages sustained by the next of kin, by reason of the death of the deceased. The elements and measure of damages are entirely different. In the first, the elements of damage are pain, suffering, etc., inflicted by the wrong-doer, and such expenses as the deceased may have been put to in attempting to effect a cure, etc.

In the second, it is simply the loss sustained by the next of kin, after the death of the deceased.

Under the construction of the trial court, placed on these statutes, if an injured party should live six months and pay enormous expense bills in caring for himself, and in attempting to effect a cure and then die, no action could be maintained by his administrator to recover anything for the expense, loss of time, pain, suffering or injury, it matters not how flagrant the wrong. The subsequent act did not in terms repeal the former, and covering, as it does, an entirely different subject-matter, and relating entirely to a different cause of action, we know of no canon of construction by which the court could arrive at its conclusion. 41 Ark., 295; Thomps. on Negl., pp. 1285–6; 38 Vt., 294; 4 Bissell, 430.

2. The second cause of action is based on secs. 5225–6, Mansf. Dig.

This was not an ordinary case of an employe suing the master for defective appliances. The ordinary rule in such cases was an element in this case, but the principle adopted by the courts, controlling and qualifying the usual rule of the master's duty to the employe, when the employe is an inexperienced-boy of less than mature years, was lost sight of by the court in its charge given for defendant, and was eliminated and refused in the charge asked by plaintiff.

The plaintiff's case rested upon two phases, viz: The defendant was negligent in the construction and maintenance

of its guard rails, even if the deceased was found to have been experienced and capable of understanding the hazard and risk of the employment, and to have waived the danger and defect by continuing in the service; and, even if the danger was patent and could have been seen and appreciated by an ordinary employe, the deceased was so inexperienced and youthful that he was incapable of understanding and assuming such risks and dangers as are contemplated by the usual rule applied to master and servant. The court erred in refusing the second instruction for plaintiff, and in giving those for defendant, thus compelling the jury to be controlled by the law applicable to adult and experienced employes. A youth of immature years, inexperienced and incapable of understanding and appreciating the dangers and risks incident to the service, does not waive, nor assume, the unknown hazards incident to his employment. 66 Wis., 277; 8 A. & E. R. R. Cas., 527.

The sixth instruction for defendant was error. Mere knowledge that the rail was unblocked was not sufficient; he must have known, or been informed of, the *danger* of an unblocked guard rail. A mere knowledge of the defect is not a waiver of the risk and hazard. 70 Cal., 261; 8 A. & E. R. R. Cas., 527; 32 Minn., 233; 32 Alb. Law J., 319; 60 Mich., 502; 31 A. & E. R. R. Cas., 221; 68 Wis., 520; 72 Cal., 197; 128 U. S., 91; 37 Minn., 409.

The current of authority is now and always has been that, in the case of an ordinary employe, there must not only be a knowledge of the defect, but also a knowledge of the danger growing out of such defect. And the authorities are uniform that in a case where the employe, from youth or inexperience, is incapable of understanding and appreciating the dangers and hazards incident to the service in which he is engaged, the presumption that he waived the negligence of the master, or the defective appliances, is not a question of law, but must be submitted to the jury as a question of fact, under proper

instructions. See 8 Allen, 441; 102 Mass., 572; 113 Mass., 396; 3 Fost. & F., 622; 13 Allen, 433; 17 Wall., 543; 15 N. W. Rep., 107; 3 Wood, Railways, note 2, p. 1483; Thomps. on Negl., vol. 2, p. 977; 48 Ark., 333.

3. When one knowingly engages a minor in a dangerous employment without the father's consent, and the minor is injured in such employment, he is responsible to the father for any consequent loss of the son's services, and the contributory negligence of a minor cannot in a case like this be pleaded as a defense to an action by the father. 71 Ind., 451; 17 Ind., 323; 1 Ware, 75; 1 Ware, 91; 54 Tex., 556; 21 Cent. Law J., 57; 17 Wall., 553.

In view of these authorities, the court erred in its instructions in the third cause of action brought by the father.

*Dodge & Johnson* for the railway company.

1. The demurrer to the first count was properly sustained.

After citing and reviewing Gantt's Dig., sec., 4760; Rev. St., ch. 4, sec. 59; Mansf. Dig., secs. 5223, 5225–6; Acts 1875, p. 133; Acts 1883, p. 75; Art. 5, sec. 32, Const. 1874; 41 Ark., 291; 41 Ark., 388, contend that the act of February 3, 1875, modified very materially sec. 5223, Mansf. Dig., if in fact it did not repeal or supersede it entirely; and that the act of 1883 (secs. 5225–6, Mansf. Dig.) absolutely repealed sec. 5223, and limited and circumscribed the recovery in all cases where death was the result of some wrongful act, to the pecuniary loss sustained by the widow and next of kin of the deceased. The act of 1883 when compared with sec. 5223, makes it plain that no recovery can be had except for the benefit of the widow and next of kin. 41 Ark., 386–9. Under our law, as it stands, the action survives, not for the benefit of the injured person's estate and his creditors, but solely and wholly for the widow and next of kin, and the recovery to be had is not for "pain

or suffering" or "anguish of body or mind" of the injured, but is to be measured by the pecuniary loss sustained by the beneficiaries under the act. This was the limit; it could be no more and no less.

The first count fails to allege that the deceased died leaving any next of kin surviving or widow. This is fatal. Mansf. Dig., secs. 5225–6; 41 Ark., 387; 3 Wood, R'y Law, secs. 409, 410, 413; 10 N. W. Rep., 411; 8 N. W. Rep., 875; 37 Ark., 39; Cooley, Torts, 14, 16; 95 Pa. St., 158; 55 Ga., 143; 12 S. W. Rep., 128; 5 S. W. Rep., 875; 11 S. W. Rep., 1013; 11 S. W. Rep., 907; 23 Ind., 135; 34 Ark., 495.

2. An administrator, as the personal representative of a minor, has no legal capacity to sue for the death of a minor, for the reason that under sec. 3, act of February 3, 1875, that right devolved upon and survived alone to the father. Acts 1875, p. 133. This section has never been repealed, although not incorporated in Mansf. Dig. See Mansf. Dig., secs. 3538, 6490–1, 5225–6. Nor are secs. 3538–9 repealed by sec. 5226. 41 Ark., 149. "When the person killed or wounded be a minor, the father, if living, if not, then the mother; if neither be living, then the guardian" etc., may sue. 34 Ark., 493; Acts 1875, p. 133; 7 A. & E. R. R. Cas., 25 and note; 81 Ill., 590; 64 Mo., 112. The suit should have been by the father and not by the administrator.

The right of action survives to the father as next of kin, and a suit by him bars *all* other actions by an administrator or legal representative. Sheldon on Sub., sec. 230; 49 Tex., 31; 50 Ark., 1.

Using unblocked guard rail is not negligence, there being no statutory provision to the contrary. 35 Ark., 615; 28 A. & E. R. R. Cas., 488; 71 Ill., 418; 110 Ill., 340; 74 Ind., 447; 49 Mich., 466; 69 Mo., 320; 32 Mo., 411; 3 Hun, 338; 63 N. Y., 453; 42 Ala., 672; 118 Ill., 45.

The testimony must be more consistent with negligence

than the absence of it. 62 Ind., 504; 70 Ind., 569–574; 44 Pa. St., 375; 118 Ill., 45.

The master is not an insurer, nor does he guarantee that the tools, machinery and instrumentalities will not prove defective or insufficient; he only undertakes to use reasonable care to prevent injury. 46 Ark., 567; 35 Ark., 602; 44 Ark., 529.

The knowledge of the employe of the character of the guard rail and his election to work with it in the condition it was constructed, bars a recovery; he assumes the risk as one of the usual hazards of employment. 147 Mass., 605; 135 Mass., 398; 138 Mass., 390; 139 Mass., 580; 140 Mass., 150; 71 Mo., 164; 5 A. & E. R. R. Cas., 610; 12 A. & E. R. R. Cas., 210; 13 N. W. Rep., 508; 78 N. C., 300.

The deceased was alone responsible for his injuries, by his carelessness in attempting to uncouple the cars in the mode and manner he did. 67 Mo., 275; 50 Wis., 66. There must be fault on the part of the master and *freedom* from contributory fault on part of the servant, and the fault must be traceable directly to the master. If it is uncertain who was at fault, no recovery can be had. 90 Mass., 575; 46 Ark., 567; 41 Ark., 393; 22 Ind., 29; 20 Mich., 105; 32 Iowa, 357; 50 Mo., 302; 67 Mo., 239; 51 Ark., 476; 4 Oregon, 52; 48 Ark., 346.

3. The defendant was under no legal or moral responsibility to plaintiff as father of deceased, a minor, because it employed him without the consent of the parent. 3 Pick., 201; Wood on Mast. & S., p. 15, etc., and notes; 15 Gray, 82; 54 Mo., 246; Thomps. on Negl., vol. 2, p. 977; 1 Coldw., 611; 2 H. Black., 511; 39 Ark., 24.

COCKRILL, C. J. These appeals involve three suits brought against the railway on account of an injury to a minor resulting in his death. Two are by the personal representative of the minor—one of them for the benefit of his

estate, the other for the benefit of the next of kin.     The third
is an action by the father of the minor to recover for the loss
of his son's services during his minority.

The question presented at the threshold of the cases is,
who can maintain action against a railroad for an actionable
injury resulting in the death of a minor?

The answer involves a consideration of the common law
and the statutes on the subject.

The cause of action which accrued to the injured party
by the common law, survives to his administrator after his
death by virtue of a provision of the revised statutes of 1838,
which is carried into Mansfield's Digest as sec. 5223.

1. Sec. 3 of Act of Feb. 3, 1875, repealed.

The third section of the act of February 3, 1875, pre-
scribed that when a wife was killed by a railway train, the
husband should sue; when a minor was killed, the father,
mother or guardian, should sue; in all other cases the suit
was to be by the legal representative.     Acts 1874–75, p.
133.     The act applied only to injuries by the trains of rail-
ways.

In 1883 another act upon the subject was passed embody-
ing, in this particular, the provisions of the English statute of
9 and 10 Victoria, known as Lord Campbell's Act.     Mansf.
Dig., secs. 5225–6.     It contains no express repeal of either
of the other provisions, and it is argued that, as the act of
1875 is a special act relating only to railways, none of its
provisions are abrogated by the subsequent general act, but,
unless it supersedes the act of 1875 in so far as it affects this
enquiry, the law is left in an anomalous condition.     It would
stand thus:   If an actionable injury resulting in death should
occur by an agency other than the trains of a railway, the
widow and next of kin would enjoy the benefit of damages
recovered therefor under the last act; but, if the injury was
inflicted *by the trains* of a railway, the recovery would be
solely for the benefit of the estate, because the last act would
not apply in such cases.     *Townsend v. Railway*, 41 Ark.,

382. Again, a mother dependent upon her adult son for support, could recover nothing for a culpable injury to him by the trains of a railway resulting in death, but could recover if the injury was inflicted by a natural person, a street railway or other corporation, or perhaps by a steam railway by other means than through its trains. We cannot attribute an intention to the legislature to work out such a result. As if to dispel all doubt as to the intent to extend the benefits of the last act to the widow and next of kin of the deceased in all classes of cases, the act declares that it shall apply in every case where "the person who, or the company or corporation which," is liable for the injury, is sued. The reasonable construction of the act is that it applies to all cases in which a recovery may be had, regardless of the agency by which the injury was inflicted. Such has been the accepted construction of the act by bench and bar without an express ruling on the point. See *Fordyce v. McCants*, 51 Ark., 509; *Railway v. Townsend*, 41 Ark., *supra*.

The question then is, what is the effect of this statute (Mansf. Dig., secs. 5225–6) upon the general provision (*ib.*, sec. 5223) regulating the revival of actionable wrongs to the administrator or executor of the injured person? We are not without authority upon the question. The English rule, which is commonly followed by the courts of the States whose statutes embody the provisions of Lord Campbell's act, is that the right of action, given by the latter statute to the personal representative of one whose death has been caused by the default of another, is created by the statute, and is not a continuation of the right of action which the deceased had in his life-time, although the new right, it has been ruled, arises only by preserving the cause of action which was in the deceased. If the deceased never had a cause of action, none accrues to his representative or next of kin. The right which accrued to the deceased revives to his administrator by virtue of the former statute (Mansf. Dig.,

2. What actions lie for wrongs resulting in death.

sec. 5223); the newly created right results from, and accrues on, the death of the injured party. Both actions are prosecuted in the name of the personal representative, where there is one, and may proceed *pari passu*, without a recovery in the one having the effect of barring a recovery in the other, because the suits are prosecuted in different rights and the damages are given upon different principles to compensate different injuries. One is for the loss sustained by the estate and for the suffering from the personal injury in the life-time of the decedent, the recovery in which goes to the benefit of the decedent's creditors, if there are any; the other takes no account of the wrongs done to the decedent, but is for the pecuniary loss to the next of kin, occasioned by the death alone. The death is the end of the period of recovery in one case and the beginning in the other. In one case the administrator sues as legal representative of the estate, for what belonged to the deceased; in the other he acts as trustee for those upon whom the act confers the right of recovery for the pecuniary loss inflicted upon them. *Blake v. Railway*, 18 Q. B., 93; *Pym v. Railway*, 2 B. & S., 759; *Barnett v. Lucas*, Irish Rep., 6 C. L., 247; *Needham v. Railway*, 38 Vt., 294; *Littlewood v. The Mayor etc.*, 89 N. Y., 24; *Railway v. Phillips*, 64 Miss., 693; *Hulbert v. Topeka*, 34 Fed. Rep., 510; *Fordyce v. McCants*, 51 Ark., *supra*.

The statutes under which the two actions are brought do not therefore cover the same ground; there is no repugnancy between them, and the latter does not impair the right conferred by the former. *Needham v. Railway*, 38 Vt., *supra; Commonwealth v. Railway*, 107 Mass., 236.

We are aware that the cases are not harmonious to this effect. The conflicting arrays are marshaled in an elaborate article on the subject in 28 Am. Law Reg. (N. S.), pp. 385 and 513. But the position assumed above is, as we conceive, sustained by principle and the weight of authority.

The same reasons which prevent the right given by the

statute to the next of kin from being exclusive of that which accrued to the decedent and survived to his administrator, preserve the right of the father to maintain his common law action against the railway for the deprivation of his minor child's services. *3. Parent's right of action for loss of minor child's services— Measure of damages.*

The statute confers no right of recovery upon the father for the loss of services prior to the minor child's death, nor was it intended to deprive him of any right. Its object was to enable him, through the personal representative, to recover the value of the services of which he is deprived, just as he recovers for any other pecuniary loss which he sustains by the death.

But where the injury resulted in death, the father's right of recovery by the common law was limited to the interim between the disabling injury to the child and its death. His right of recovery was restricted to the value of the minor's services and the cost of medical attendance and nursing to the time of death. The right fell with the life of the minor. This was upon the theory that no civil action would lie for a right springing from the death of a human being. The application of the rule to a case like this has been ably contested and denied (see opinion by Judge Dillon in *Sullivan v. U. P. Railway*, 3 Dill., 334), but the question is not an open one upon authority. *Barker v. Railway*, 33 Ark., 350; *Townsend v. Railway*, 41 Ark., *supra; Insurance Co. v. Brame*, 95 U. S., 754; *The Harrisburg*, 119 U. S., 199; Cooley on Torts, p. 262.

It follows from these views that the court erred in dismissing the action prosecuted by the administrator for the benefit of the estate; and also in permitting the plaintiff in his suit as parent to recover the value of his minor son's services after the latter's death. Damages accruing from that cause could be recovered only in the suit by the administrator, prosecuted for the benefit of the father as next of kin. In that suit the verdict was for the railway company,

and we are asked to reverse it upon the ground that the court's charge to the jury is erroneous.

While the plaintiff's intestate, who was a youth eighteen years old and of limited experience in railway matters, was in the discharge of his duties in uncoupling the cars of one of the defendant's trains in its yard at Knobel where he was employed, his foot caught in a space between the guard and main rails of the track, and he was injured by the moving train. The testimony was conflicting upon the question whether a block in the space where the boy's foot was caught could be used so as to lessen the hazard of the employe without enhancing the danger of derailing the trains.

The question for the jury's consideration was not whether the railway company was guilty of negligence in failing to block the space between the main and guard rails; because, even if the failure to do that could, upon the evidence adduced, be found to constitute negligence, (as to which see *Railway, v. Lonergan*, 118 Ill., 45; *Rush v. Railway*, 28 A. & E. R. R. Cas., 488 and note; *Mays v. Railway*, 63 Iowa, 562; *Huhn v. Railway*, 31 A. & E. R. Cas., 221,) the proof shows that the deceased continued in the service after he knew, or what is the same thing, had full opportunity to know, that the rails were unblocked. *Railway v. Leverett*, 48 Ark., 333. But service about the unblocked rails was attended with danger, and the knowledge of the fact that the rails were unblocked, did not necessarily imply knowledge of the attendant danger. Knowledge of the danger was itself a question of fact; and, if the jury believed that the deceased, by reason of his youth and inexperience, did not know of or appreciate the danger incident to service about the unblocked rails, and that the company had exposed him to the danger without warning him of it, they should have found that the risk was not one he had assumed by entering the service. *Railway v. Leverett*, 48 Ark., *supra*

*Fones v. Phillips*, 39 Ark., 17; *Bauer v. Railway*, 46 Ark., 396; *Jones v. Florence Mfg. Co.*, 66 Wis., 268.

It is useless to follow the charge on these points. The duty of the master to instruct the young and inexperienced servant, so as to enable him to appreciate the danger attending the. employment, was submitted to the jury in an instruction given on behalf of the plaintiff, while the charge given at the instance of the defendant submitted the case as though there were no question of inexperience in the servant presented by the evidence. That was at least misleading, and its tendency was to confuse the jury. But there was positive error in the charge in saying to the jury, in effect, that the intestate's knowledge of the fact that the rails were unblocked was knowledge of the attendant danger. Whether he had knowledge of or appreciated the danger, or ought to have done so, was a question for the jury to determine upon the facts and circumstances shedding light upon the question.

The charge is made up wholly of requests for instructions from the parties, and the two theories of the case presented by them are not so consistent and harmonious as to render it an easy task for the jury to determine where their duty lay. The fault is inherent in the practice of giving in charge to the jury the requests for instructions prepared by counsel. They are not uncommonly framed with a view to giving the greatest advantage to the side which presents them, and do not, in that event, tend to lighten the labors of the jury; and, when they are accurately and fairly framed on both sides and involve no contradictions, the issues are presented in disconnected propositions of law, which the jury will find more difficult to comprehend than in a charge presenting all the issues on a single phase of the case together in close contrast and presenting the whole law of the case as emanating from the court without apparent instigation from either side. What can be a greater paradox in the administration of

5. Charge to jury—How prepared.

justice, or more confounding to a jury, than for a court to say to them, as is sometimes done, " For the plaintiff, the court declares the law to be thus; for the defendant, so; and on its own motion as follows"—as though there were three sides to a single legal proposition, between which the jury are at liberty to choose?

It is the duty of counsel to present their prayers for instructions in order to aid the court, and to show their position in the case on appeal, but the better rule for the court would be to treat the requests only as counsel's suggestions of what they desire the court to call the jury's attention to, and to embody no more than the substance of them in the charge.

The records of this court bear abundant testimony of the success of this practice at the hands of the learned and usually careful and painstaking judge who tried this cause. The practice of making up the charge from the requests for instructions prepared by counsel leads to the constantly recurring argument in this court, that the charge to the jury is inconsistent and misleading; and has resulted in the remanding of many causes, and, perhaps, in the miscarriage of justice in many others, by the indulgence of the presumption that the jury was able to reconcile the apparent inconsistencies or penetrate the obscurities of the charge.

For the errors indicated, each of the judgments will be reversed, and the causes remanded for further proceedings.