## FULGHAM v. MIDLAND VALLEY R. CO.

(Circuit Court, W. D. Arkansas, Ft. Smith Division. February 19, 1909.)

1. COMMERCE (§ 58*)—FEDERAL RAILROAD EMPLOYER'S LIABILITY ACT—SCOPE.

The federal railroad employer's liability act of April 22, 1908, c. 149, 35 Stat. 65, supersedes all state statutes regulating the relations of railroad employers and employés engaged in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 58.*]

2. DEATH (§ 10*)—FEDERAL RAILROAD EMPLOYER'S LIABILITY ACT—ACTION FOR INJURY TO EMPLOYÉ—SURVIVAL.

Under the railroad employer's liability act of April 22, 1908, c. 149, § 1, 35 Stat. 65, which gives a right of action, in case of death of any employé injured in interstate or foreign commerce through the negligence of such employer, to his personal representative, the employé's right of action for an injury does not survive his death.

[Ed. Note.—For other cases, see Death, Dec. Dig. § 10.*]

At law.

The questions discussed and decided in this case arose upon an argument based upon two motions, the one to strike out certain portions of the complaint which looked to the recovery of damages by the plaintiff as administrator of the estate of E. C. Pogue, deceased, for the benefit of said estate, growing out of pain and suffering and loss of time and expenses incurred by the deceased before his death; and in the other motion it was insisted that the complaint contained in one count two separate and distinct causes of action, and defendant moved the court to require plaintiff to elect whether he would stand upon the cause of action which related to damages for the benefit of the widow and children of the deceased, or whether he would stand on the cause of action looking to recover damages for pain and suffering and loss of time and expenses incurred by the deceased before his death. Both motions, by consent, were argued and submitted together. The opinion sufficiently indicates the views of the court on those motions. The views expressed by the court were acquiesced in by counsel, and an amended complaint filed, confining the right of recovery to the injury to the widow and children of the deceased, because of his death.

Oscar L. Miles, for plaintiff.
Ira D. Oglesby, for defendant.

ROGERS, District Judge. On April 22, 1908, Congress passed what is known as the "Railroad Company Employer's Liability Act," the first section of which is as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such em-

ployee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment." Act April 22, 1908, c. 149, 35 Stat. 65.

The complaint in this case is in two counts. The first is for the benefit of the estate of the deceased, and involves the right of the administrator to recover for pain and suffering, mental and physical (including wanton and negligent treatment of the deceased after his injury), up to the period of his death. The second count is for the benefit of the surviving widow and children of the deceased, and involves damages for his wrongful death, etc.

It is apparent that these two separate and distinct causes of action are modeled upon the legislation of the state of Arkansas (Kirby's Digest, §§ 6285-6290), which were interpreted in the case of Davis v. Railway, 53 Ark. 117, 13 S. W. 801, 7 L. R. A. 283. In that case one cause of action was given under section 6285, and the other under sections 6289 and 6290. The former was for the benefit of the estate; the latter for the benefit of the widow and next of kin. Section 6285 expressly provides for the survival of the right of action for the injury in case of death as the result therefrom, and vests the right of action in the personal representatives of the deceased, for the benefit of his estate. The other two sections give a right of action for a death caused by negligence, and also vests the right of action in the personal representatives of the deceased for the benefit of the widow and children. The court in Davis v. Railway, supra, held that the statutes creating these two causes of action were not in conflict, were in their natures separate and distinct, and both vested in the personal representative, and might proceed pari passu in one suit.

What of the federal statute quoted above? First, can plaintiff avail himself of the Arkansas statutes in this character of case for any purpose? It is admitted the suit was brought under the federal statute quoted. It could not have been brought in this court had it not been, for the citizenship of the parties is the same. The authority for enacting the statute must be found in the interstate commerce clause of the federal Constitution (Const. art. 1, § 8, cl. 3). The very terms of the act are conclusive of that, and it is not controverted. A reference to the whole act clearly shows Congress undertook to regulate the relations of employers and employés engaged in interstate commerce by railroad. This act is intentionally limited to interstate commerce. Another act on the same subject had been declared unconstitutional because it covered the regulation of intrastate commerce. The Employer's Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. This court held in Smeltzer v. St. Louis & San Francisco Railroad Company (C. C.) 158 Fed. 649-651, upon authorities there cited, that:

"The power of Congress under the interstate commerce clause of the Constitution is plenary, and without limitation other than those prescribed in the Constitution itself."

In Atlantic & Tel. Company v. Philadelphia, 190 U. S. 162, 23 Sup. Ct. 817, 47 L. Ed. 995, the court, speaking through Mr. Justice Brewer, said:

"First. As said by Mr. Justice Bradley, speaking for the court, in Robbins v. Shelby Taxing District, 120 U. S. 489, 492, 7 Sup. Ct. 592, 593, 30 L. Ed. 694: 'The Constitution of the United States, having given to Congress the power to regulate commerce, not only with foreign nations, but among the several states, that power is necessarily exclusive whenever the subjects of it are national in their character, or admit only of one uniform system or plan of regulation.'

"In addition to the many cases referred to by him, the following subsequent decisions may also be cited: Fargo v. Michigan, 121 U. S. 230, 246, 7 Sup. Ct. 857, 30 L. Ed. 888; Philadelphia Steamship Co. v. Pennsylvania, 122 U. S. 326, 336, 346, 7 Sup Ct. 1118, 30 L. Ed. 1200; Western Union Tel. Co. v. Pendleton, 122 U. S. 347, 357, 7 Sup. Ct. 1126, 30 L. Ed. .1187; Bowman v. Chicago, etc., R. Co., 125 U. S. 465, 497, 8 Sup. Ct. 689, 31 L. Ed. 700; Leloup v. Port of Mobile, 127 U. S. 640, 648, 8 Sup. Ct. 1380, 32 L. Ed. 311; Asher v. Texas, 128 U. S. 129, 131, 9 Sup. Ct. 1, 32 L. Ed. 368; Stoutenburgh v. Hennick, 129 U. S. 141, 148, 9 Sup. Ct. 256, 32 L. Ed. 637; Leisy v. Hardin, 135 U. S. 100, 110, 10 Sup. Ct. 681, 34 L. Ed. 128; Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150; McCall v. California, 136 U. S. 104, 109, 10 Sup. Ct. 881, 34 L. Ed. 392; In re Rahrer, 140 U. S. 545, 555, 11 Sup. Ct. 865, 35 L. Ed. 572; Crutcher v. Kentucky, 141 U. S. 47, 58, 11 Sup. Ct. 851, 35 L. Ed. 649; Brennan v. Titusville, 153 U. S. 289, 304, 14 Sup. Ct. 829, 38 L. Ed. 719; Interstate Commerce Commission v. Brimson, 154 U. S. 447, 471, 14 Sup. Ct. 1125, 38 L. Ed. 1047; United States v. E. C. Knight Co., 156 U. S. 1, 21, 15 Sup. Ct. 249, 39 L. Ed. 325; Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49; Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; Stockard v. Morgan, 185 U. S. 27, 22 Sup. Ct. 576, 46 L. Ed. 785."

It is clear that the act of April 22, 1908, supra, superseded and took the place of all state statutes regulating relations of employers and employés engaged in interstate commerce by railroads. It covered not only injuries sustained by employés engaged in that commerce resulting from the negligence of the master and his servants, and from defects in the designated instrumentalities in use in that commerce, but also dealt with contributory and comparative negligence and assumed risk, making in certain cases, at least, the master an insurer of. the safety of the servant while in his employment in that commerce. It covers and overlaps the whole state legislation, and is therefore exclusive. All state legislation on that subject must give way before that act. Miss. Railroad Commission v. Ills. Cent. R. R. Company, 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209; Sherlock et al. v. Alling, Administrator, 93 U. S. 104, 23 L. Ed. 819. These last cases serve to show that, until Congress has acted with reference to the regulation of interstate commerce, state statutes regulating the relations of master and servant and incidentally affecting interstate commerce, but not regulating or obstructing it, may be given effect; but when Congress has acted upon a given subject, state legislation must yield. In Gulf Colorado, etc., Railroad Co. v. Hefley, 158 U. S. 99, 15 Sup. Ct. 804, 39 L. Ed. 910, the court said:

"When a state statute and a federal statute operate upon the same subject-matter, and prescribe different rules concerning it, the state statute must give way."

I come now to examine the act under consideration. It is in derogation of the common law, and must be strictly construed, but not so strictly as "to defeat the obvious intention of Congress as found in the language actually used according to its true and obvious meaning." Johnson v. Southern Pacific Railroad Company, 196 U. S. 1, 25 Sup. Ct.

158, 49 L. Ed. 363. I think this act is in harmony with the purposes and recommendations of the President in at least two messages, and also in harmony with what it is claimed is the strong trend of the public mind in nearly all civilized countries at this time. It proceeds on the theory that the railroad corporations are quasi public corporations, and that the railroad company in the first place, and the public in its final analysis, should be insurers of the lives and persons of its employés while engaged in interstate commerce, for if the railroad companies are to be the insurers of their employés they must in the end be reimbursed also by their customers for whom they do the carrying business, and in its last analysis their customers are simply the public. The theory of this legislation is that the public should share the misfortunes of the families of those who are injured or killed in the quasi public business in which railroads are engaged. So it is provided, in substance, where the employé is injured in the service of a railroad while engaging in interstate commerce, he shall have a cause of action for that injury, and this action he can maintain in his own name, although he may have by his own negligence contributed to the injury; but the damages in such case shall be diminished by the jury in proportion to the amount of negligence attributable to such employé. Here the common-law doctrine of contributory negligence is abrogated in the interest of the employé and the doctrine of comparative negligence substituted, which, pro tanto, encourages care and diligence upon the part of the employé. The act further provides that the servant's contributory negligence shall not deprive him of compensatory damages to any extent, if the master's failure to observe any statute enacted for the protection of the employé has contributed to the servant's injury; nor shall the servant be held to have assumed the risk under such condition; and no device, rule, regulation, or contract the master may make with his servant, or for his guidance, shall relieve him from any liability imposed by the act. These changes are all distinctive advantages to the employé, and all in derogation of the common law, and some of them far in advance of the statutes of this state in like cases. But it will be observed on the other hand that the act makes no provisions for the survival of that action, so given, for an injury sustained, in the event of the death of the injured employé. In Ward v. Blackwood, Ad., 41 Ark. 298, 48 Am. Rep. 41, the court said:

"At common law no action for a tort survived the death either of him who inflicted or of him who received it. 'No action,' said Lord Mansfield, 'where in form the declaration must be quare vi et armis et contra pacem, or where the plea must be that the testator was not guilty, could lie against the executor; upon the face of the record the cause of action arises ex delicto, and all private criminal injuries or wrongs, as well as all public crime, are buried with the offender.' Hambly v. Trott, Cowper, 375.

"So an action would not lie for the personal representative. 'Executors and administrators are the representatives of the temporal property—that is, the debts and goods—of the deceased, but not of their wrongs, except when those wrongs operate to the temporal injury of their personal estate.' Chamberlain's Adm'r v. Williamson, 2 Maule & S. 408, per Lord Ellenborough.

"But our statute has changed the common law. Section 4760 of Gantt's Digest provides: 'For wrongs done to the person or property of another, an action may be maintained against the wrongdoers, and such action may be brought by the person injured, or, after his death, by his executor or administrator, against such wrongdoer, or, after his death, against his executor or

administrator, in the same manner and with the like effect in all respects as actions founded on contracts.'"

But it will be seen that the statute of Arkansas did precisely what the statute under consideration did not do—it provided expressly for the survival of the action, and vested the right of action in the personal representative in the event the injured person died. It cannot be that legislation so much discussed in and out of Congress, and which had. to be so carefully matured and drawn in order to meet the views of. the courts, legislation, too, which inherently shows the skill of the lawyer evidently familiar with the settled principles of the common law, which it modifies in the interest of justice and humanity, is not expressive of the will of Congress, or omits anything which Congress intended to do by it. It would have been so easy for Congress to have said, as the legislation of so many states had previously provided, that in the event the employé injured should die from the injury his cause of action should survive to his personal representative, that it can scarcely be conceived that the provision would have been omitted had Congress so intended. But whatever Congress may have intended, it has not done so, and the courts must confine themselves to the administration of the law, and neither add nor take from a statute where its language is clear and unambiguous. In the opinion of the court the right of action given to the injured employé by the act of April 22, 1908, does not survive to his personal representative in the event of his death, but, as at common law, perishes with the injured person. I might add that this conclusion is in harmony with the known purposes of the act, which was intended to make some provision for the unfortunate family of the deceased employé, and not to make provision for the creditors of his estate. Can it be supposed that Congress would make a railroad company the insurer of an employé, killed in its service, for the purpose of paying the debts the employé had incurred in his. lifetime? And yet that would be the inevitable result if the contention of plaintiff's counsel is sound, for whatever is recovered on account of injuries sustained and for which the injured employé had a cause of action in his lifetime must go to his estate. Indeed, such is the prayer of the complaint in this very case,