[Filed June 24, 1891.]

## ANDREW KNAHTLA v. OREGON SHORT LINE, ETC., RY. CO.

REMOVAL OF CAUSES — FEDERAL COURTS.— A state court does not lose jurisdiction of a cause by making an order transferring it to the circuit court of the United States, when the latter court refuses to entertain jurisdiction. An order therefore for removal to the United States court, in a case not embraced by the act of congress, is void and has no force in law; and although its practical effect may be an improper interruption of the prosecution of the cause in the state court, the cause is to be considered as having been all the time pending before the latter tribunal.

ALLEGATA AND PROBATA — FAILURE OF PROOF — DAMAGES.— Under a complaint which charges the injury complained of to have been caused by the negligence of a defendant railway company in permitting a bridge on its road to become and remain out of repair, and failing to keep proper watch and oversight of the same, the plaintiff will not be allowed to show that the bridge was constructed originally in an improper and negligent manner, and this because the proofs and allegations must correspond with each other.

MASTER AND SERVANT — PLEADING — INJURY.— It is the duty of the master to exercise reasonable care to provide safe and proper appliances for the use of a servant, and to keep such appliances in proper repair; but the complaint of a servant in an action against the master for injuries received in his service must charge negligence in reference to the particular matter producing the injury.

IDEM — FELLOW SERVANTS.— A section-hand riding on a work train from one place of his work to another, under the charge of the road-master, is fellow-servant of the conduct and engineer of such train.

IDEM — NEGLIGENCE OF FELLOW-SERVANT.— A master is not liable for an injury to his servant caused by the negligence of a fellow-servant; but the master

will not be relieved if his own negligence contributed to the injury, and if the negligence of the co-servant would not have caused the injury but for the concurrent negligence of the master.

RAILROADS — FRESHETS — DEGREE OF CARE.— Railway companies should construct their bridges and trestles so as to be secure and sufficient against usual and ordinary floods in the particular section of country; and even a defective condition of their bridges caused by a sudden and extraordinary freshet will not be excused, if there be time in the exercise of reasonable care and attention to discover the defect.  Whether there was such time or not is a question of fact for the jury.

SPECIAL VERDICT — DISCRETION OF COURT.— It is solely within the discretion of the trial court to require the jury to find a special verdict, and the exercise of that discretion will not be reviewed on appeal.

PRACTICE — REQUESTS TO CHARGE JURY.— The submission by counsel of numerous and lengthy requests to charge the jury, is deprecated as tending to confuse rather than to aid in the practical administration of justice.

Wasco county: R. P. BOISE, Judge.

Defendant appeals.  Reversed.

This is an action to recover damages for injuries received by plaintiff in a wreck on defendant's road, caused by the giving way of a bridge near Cascade Locks and the falling through of a train on which plaintiff was being carried.

After the service of process, and before the time for answering had expired, the defendant company filed a general demurrer, and at the same time filed a petition for removal of the cause to the circuit court of the United States, accompanied by the usual bond, whereupon the bond was approved and an order made transferring the cause to the United States court.  Afterwards that court made an order remanding the cause to the state court for want of jurisdiction; and upon the filing of a properly certified copy of the order, the state court assumed jurisdiction and proceeded with the trial of the cause.

Plaintiff, who is a common laborer, was in the employ of the defendant as a section-hand on a section of its road near The Dalles, some forty or fifty miles from the place of the accident.  On the day before the accident, the road having become obstructed by land-slides, the plaintiff was ordered by the road-master of defendant to leave his section

and go with other men in charge of the road-master on a delayed passenger train of the company to assist in clearing the road of slides between Cascade Locks and Bonneville. The material allegations of the complaint, omitting formal allegations, are as follows:

"That on or about the second day of February, 1890, and while the defendant was transporting the plaintiff upon its cars from the place where he had previously been employed to a place where further repairs had to be made, the defendant negligently and carelessly permitted its line of track and the bridges thereon to become and remain out of repair and unsafe, and negligently and carelessly failed to properly inspect said line of track and bridges, and to keep proper watch and oversight over the same, and to ascertain and report the condition thereof; and especially of a certain bridge on the line of said road situated between Cascade Locks and Lower Cascades, over and across which the plaintiff was required to go to get to the place where the defendant required his services as aforesaid, and which bridge the defendant negligently and carelessly permitted to become and remain out of repair and in an unsafe condition, and negligently and carelessly failed to keep a proper watch and oversight over the same as aforesaid, and negligently and carelessly failed and omitted to ascertain the condition of the same and to report it to the officers in charge of the train upon which the plaintiff was being carried as aforesaid; that while the plaintiff was being carried across the said bridge by the defendant, in its cars as aforesaid, by reason of the defective and unsafe condition of said bridge, and by reason of the failure of the defendant to keep a proper watch and oversight and to ascertain and report the condition thereof to the officers in charge of said train upon which the plaintiff was riding, and by reason of the negligence and carelessness of the defendant's said officers in not keeping a proper lookout and in operating said train, the said bridge and the railroad track upon the same gave way and the plaintiff was

precipitated through the same, whereby he was greatly bruised," etc., pleading permanent injury.

The train upon which plaintiff was being carried left The Dalles in the forenoon of the day before the accident and reached Cascade Locks at 2:30 P. M. Communication was there had with the train-dispatcher at The Dalles, who had charge of trains on that division of defendant's road, and the train was given working orders between the Locks and Bonneville, four and one-half miles, which entitled it to run in either direction between these points as against all other trains. The train then proceeded westbound, passing over bridge No. 68, the giving way of which caused the accident, and found the slide about a half a mile west of this bridge. The workmen, some twenty or thirty, under charge of the road-master, commenced to remove the slide and continued to work until about dusk, when they walked back to Cascade Locks for the night, the train having in the meantime returned to the Locks. The next morning more men were procured, who with the engine and a caboose, the passengers and coaches having been left at the Locks, proceeded west-bound to the scene of their work the night before; and while passing over the bridge in question it gave way, letting the caboose and all the men into the bottom of the creek, killing several and severely injuring others, plaintiff being one of the latter.

The defendant by its answer denied the negligence charged or any negligence; pleaded the negligence of fellow-servants and of the plaintiff as causing and contributing to the injury; also that the alleged accident was caused by a freshet arising from natural causes without the fault or knowledge of defendant, which had arisen during the night and morning preceding the accident, and alleging that at the time of the injury the plaintiff with other workmen was out upon the defendant's road engaged in repairing and keeping the same open from obstruction thereon arising without the fault of defendant, and arising from natural causes, and the accident occurring and injury

sustained thereby, if any, was a part of the risk of the employment of the plaintiff.

The reply put in issue the affirmative matter pleaded. The trial resulted in a verdict and judgment in favor of plaintiff, from which this appeal is taken.

*Zera Snow,* for Appellant.

*A. S. Bennett,* for Respondent.

BEAN, J.—The record contains numerous assignments of error based upon exceptions duly taken to the ruling of the court during the progress of the trial on the admission of testimony and the giving and refusing instructions to the jury. We shall proceed to examine such of these as we deem material.

It is contended by appellant that the court below lost jurisdiction of this cause by the petition of defendant for removal to the circuit court of the United States and by the order approving the bond and transferring the cause to that court. The circuit court of Wasco county had, under the constitution and laws of the United States and of this state, original jurisdiction of the subject matter and of the parties in this case. That jurisdiction was formally invoked by the filing of a complaint and service of process on defendant, and the court was in the exercise of its unquestioned powers in the premises when the petition for removal was filed by defendant. Upon the filing of the petition and bond, the circuit court for Wasco county passed the order required by the statute of the United States governing the removal of causes from the state to the federal courts, but the federal court refused to entertain jurisdiction and remanded the cause to the state court, and its decision on that question is final. (*In re Penn. Co.* 137 U. S. 451.) It follows, therefore, that the cause never has in fact been removed to the circuit court of the United States. The removal is not complete until the United States court has taken jurisdiction, and this it has refused to do, so that the state court never lost its jurisdiction. When the circuit

court of Wasco county granted the application for removal
of the cause, it simply declined to proceed further in the
matter; but when it was ascertained that the order for
removal was improper and that the United States court did
not have jurisdiction, the cause revived in the state court
and should have been proceeded with as though no order
of removal had been made. (*Thacher* v. *McWilliams,* 47 Ga.
306; *Ex parte State Ins. Co.* 50 Ala. 464.) In *R. R. Co.* v.
*Koontz,* 104 U. S. 15, Mr. Chief Justice WAITE, in discussing
the proceedings in the United States court on a motion to
remand a cause removed from the state court, said: "When
the suit is docketed in the circuit court, the adverse party
may move to remand. If his motion is decided against
him, he may save the point on the record, and after final
judgment bring the case here for review if the amount
involved is sufficient for our jurisdiction. If in such a case
we think his motion should have been granted we reverse
the judgment of the circuit court and direct that the suit
be sent back to the state court to be proceeded with there as
if no removal had been had." So in *Germania Fire Ins. Co.*
v. *Francis,* 52 Miss. 466; 24 Am. Rep. 674, Mr. Justice CAMP-
BELL says : " An order for removal in a case not embraced by act
of congress is void and has no effect in legal contemplation; and
although its practical effect may be an interruption im-
properly of the prosecution of the cause in the state court,
the cause is to be considered as having been all the time
pending in the state court, which delayed to see if the United
States court would take jurisdiction, and finding it would
not, proceeds to try the case thus remitted to it as though
no interruption had occurred."

The next contention of appellant is, that evidence was
received and a verdict permitted by instructions upon a
ground of liability not pleaded. On the trial, evidence was
given and received under defendant's objection, which it
was claimed tended to show that the bridge which fell and
caused plaintiff's injury was a defective structure and
originally improperly and negligently constructed. At the

proper time the defendant requested the court to charge the jury that in so far as this case is concerned the bridge in question must be assumed to have been constructed in a proper manner. This the court refused to do, but at the request of plaintiff instructed the jury that if it appeared from the evidence that the bridge had been improperly or negligently constructed, and by reason thereof the plaintiff was precipitated through the same and injured while being carried by the defendant to the place where he was to be employed, he was entitled to recover.

The point of the objection is, that the complaint only charges negligence in keeping the bridge in repair and in failing to keep a proper watch and oversight over it in order to ascertain its condition. This brings us to the allegations of the complaint. The cause of action stated in the complaint is that "defendant negligently and carelessly permitted it (bridge) to become and remain out of repair and in an unsafe condition, and negligently and carelessly failed to keep a proper watch and oversight over the same, and negligently and carelessly failed and omitted to ascertain the condition of the same, and to report it to the officers in charge of the train upon which plaintiff was being carried." These are the only acts of negligence charged in the complaint so far as the bridge is concerned and the only ones that defendant was called upon to defend against; and as a necessary consequence the evidence on the part of plaintiff must be directed to the proof of the negligent acts charged, and the instructions of the court must be confined to its allegations and proof. The plaintiff cannot aver negligence in one particular, and on the trial prove that defendant was negligent in another particular.

The object of a complaint is to apprise the court and opposite party of the facts relied upon for a recovery so plainly that the defendant may be prepared to meet them. This object of a pleading would be entirely defeated if a plaintiff had the right to aver in his declaration one ground of action and on the trial prove another and different one.

As was said by EARL, J., in *Southwick* v. *Bank of Memphis*, 84 N. Y. 429, "pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them. If a party can allege one cause of action and then recover upon another, his complaint will serve no useful purpose but rather to ensnare and mislead his adversary."

There is no doubt that it is the duty of a railroad company to furnish for the use of its employés a reasonably safe track, which necessarily includes bridges, and to exercise reasonable care to keep and maintain the same in a good and safe condition; to cause as frequent and thorough inspection of its roadbed and track as under the circumstances may reasonably be necessary for the purpose of discovering any defects therein; to exercise care in the selection and retention of its servants, and to adopt such rules and regulations as may reasonably be necessary to guard against accident; and if the master fail to perform any of these duties and a servant is injured, he is liable in an action for damages suffered by such servant, and any duty which the master is required to perform for the safety of his servant cannot be delegated to any servant of any grade so as to exempt the master from liability for an injury resulting to a servant from its non-performance. (*Anderson* v. *Bennett*, 16 Or. 515; 8 Am. St. Rep. 311; *Hartvig* v. *N. P. L. Co.* 19 Or. 522; *Miller* v. *Southern Pac. Co.* 20 Or. 285.)

The measure of the master's duty in these respects is to exercise due care, and *prima facie* he is presumed to have done so. Thus when a railroad company builds its road, lays its rails, erects its bridges, and stocks it with machinery and cars, it is presumed to have done so with due care, and is not liable to a servant for any defect therein unless negligence can in fact be shown in reference to the particular matter producing the injury. (*Warner* v. *Erie Ry. Co.* 39 N. Y. 468; Wood Mast. & Serv. § 346.) Therefore, if a servant is injured by defects in the appliances or instrumentalities of the business, he must show some fault on the

part of the master as that he did not exercise due care in providing them originally, or that he did not exercise such care in keeping them in repair, and a complaint in an action for such injury must allege the particular duty which the master failed to perform. The duty of a master to exercise due care in providing proper and suitable instrumentalities and appliances is as separate and distinct from the duty to exercise such care to keep them in repair after being so furnished, as it is from the duty to exercise care in the employment and retention of servants. Under a complaint by an injured servant charging that the master neglected to exercise proper care to keep the appliances of the business in repair, it would not for a moment be claimed that a recovery could be had for the neglect of the master in not employing competent servants or in promulgating suitable and proper rules for the government of the business, and with no more reason can it be argued that a recovery could be had for the neglect of the master in providing the appliances in the first place.

It is the duty of the master to exercise reasonable care to provide safe and proper appliances for the use of a servant, and a continuing duty to exercise such care to keep such appliances in proper repair; and for a violation of either he is liable in damages to an injured servant, but the complaint must charge negligence in reference to the particular matter producing the injury, and the evidence and instructions of the court should be confined to issues made in the pleadings.

In cases of this character, the complaint should point out specifically the neglect complained of, and the trial should be had on the issue thus made. As was said by THAYER, J., in *Scott* v. *O. R. & N. Co.* 14 Or. 228: "The law unfortunately can only lay down general rules for the guidance of the two classes (master and servant). It can declare generally the obligations they are under, but its application can only be made to the facts and circumstances of the particular case, and it is often rendered more uncer-

tain by failure on the part of the court administering it to
require parties in the pleadings to point out specifically the
acts of negligence complained of, and to confine the investi-
gations strictly to such charges." As we have already said,
the object of the pleading is to apprise the court and oppo-
site party of the pleader's claims. Certainty to a common
intent is all that is required, and this is attained in actions
for damages resulting from negligence when the neglect of
duty relied on and the resultant injury are described with
substantial accuracy; but as the duty of a master to provide
reasonably safe instrumentalities and appliances for the use
of his servants, and the duty to exercise due care to keep
them in repair after being so furnished, are separate and
distinct duties, a charge of negligence in one will not be
supported by proof of negligence in the other. Hence,
where the complaint in action against a railroad company
for personal injuries alleged as the grounds of plaintiff's
claim, negligence on the part of the company in running
its trains over a portion of its track which had been under-
mined and rendered dangerous by flood of waters, plaintiff
is not entitled to recover for defects in the road-bed or in
the ties or material used on the road. (*Ely* v. *R. R. Co.* 77
Mo. 34.) So where the complaint alleges that by reason of
defendant's negligence in having and using insufficient and
defective machinery, and the proof is that the injury was
caused by a broken frog, which caused plaintiff to fall, he
cannot recover. (*Waldhier* v. *R. R. Co.* 71 Mo. 514.) So when
the complaint alleged that plaintiff's injury was occasioned
by a deep hole between the rails, and the evidence was that
it was between the rails of a side-track, it was held that the
complaint would naturally be construed to refer to the main
track and that the variance was material. (*Batterson* v. *C. &
G. T. Ry.* 49 Mich. 184.) So where the injury is alleged to
have been committed by the defendant carelessly running
its train against a horse, it is not competent for the plaintiff
to prove that the railroad track was not fenced or that the
cars were not provided with air-brakes, or any other negli-

gence than that averred. (*T. W. & W. Ry. Co.* v. *Foss*, 88 Ill. 551.)

In this case the complaint does not aver that the defendant did not exercise proper care in the original construction of the bridge in question, but permitted a presumedly safe bridge to become out of repair. That was the only issue presented by the pleadings, and the only one that should have been tried. It is clear, therefore, that although the instruction as an abstract proposition may be unobjectionable, the vice of it lies in its inapplicability to the issues made by the pleadings. It authorized the jury to find a verdict upon a liability not pleaded, and we have repeatedly held it to be error for the court to give the jury instructions, however correct as abstract propositions of law, if not within the issues. (*Willis* v. *O. R. & N. Co.* 11 Or. 257; *Breon* v. *Henkle*, 14 Or. 494; *Roberts* v. *Parrish*, 17 Or. 583; *Woodward* v. *O. R. & N. Co.* 18 Or. 289.) The instructions could not do otherwise than mislead the jury upon a vital point in the case; and although the court on its own motion may have stated the issues correctly to the jury, such fact would not waive the error, as it is impossible to tell which instructions the jury adopted to guide them in their deliberations, or upon which liability they based their verdict.

The charge being that defendant negligently and carelessly suffered and permitted the bridge to become out of repair and in an unsafe condition, it was incumbent on the plaintiff to prove that the bridge was in such condition and that it resulted from defendant's negligence. It was, we think, competent for plaintiff to prove the manner in which the bridge was constructed, not as an independent ground of liability, but for the purpose of showing the particular manner in which it was out of repair, and for that purpose the evidence offered and admitted may have been competent, but as we have already said, the instruction was erroneous because it authorized the jury to find a verdict on an issue not made by the pleadings.

This is not a case like those cited by respondent's

counsel where the neglect of duty relied on and the result-
ant injury are described with substantial accuracy, but
there is a variance which the courts held immaterial
between the allegations and proof in some of the particular
defects which caused the injury. This is a case where the
plaintiff has stated in his complaint one cause of action
and been permitted to recover on a different one. He
averred negligence of one kind, and under the instructions
of the court given at his request the jury was authorized
to find a verdict on proof of negligence of another kind
not referred to in the complaint, and in this there was
error. (*Carter* v. *Railway Co.* 65 Iowa, 287; *Miller* v. *Rail-
way Co.* 66 Iowa, 364.) We think, therefore, there was error
in giving the instructions complained of.

Plaintiff alleges as one of the grounds of recovery, that
"by reason of the negligence and the carelessness of the
defendant's officers in not keeping a proper lookout and in
operating the said train (referring to the train upon which
plaintiff was riding at the time of the accident), the said
bridge and the railroad track upon the same gave way,"
etc. As an answer to this cause of action, the defendant
among other things relied both in the pleading and proof
upon the proposition that the engineer and conductor on
the train were at the time of the accident fellow-servants
of the plaintiff, for the negligence of whom defendant was
not liable.

In the disposition of this question, it must be kept
in mind that the train had on the day previous ceased to
be a passenger train, had become a work-train, and at the
time of the accident was, with the workmen aboard, patrol-
ing the road under the direction of the road-master for the
purpose of opening the same by removing any obstructions
which may have accumulated thereon. When the train left
Cascade Locks on the morning of the accident it was for
the purpose of opening up the road, and the conductor and
engineer were engaged in the same common employment
with plaintiff. There was one general object to be attained.

They were each engaged in furthering the same general object, and under the direction of the same road-master. They were as much at work while riding on the train as when actually engaged in removing obstructions, although at the time of the accident plaintiff had no active duty to perform. The fact that he had no active duty to perform while riding from one point of work to another did not make him any the less an employé during those times. He could not be an employé while at work at the place of one obstruction, and while riding to the next become a passenger, and at the next obstruction become again an employé. They worked as they went, wherever they found work to do, each doing his particular part.

That a master is not liable for an injury to his servant caused by the negligence of a fellow-servant, is elementary. The reason which is said to lie at the foundation of this rule is, that when a person engages in any employment he voluntarily takes upon himself all the ordinary risks belonging to the particular service in which he is employed, among which is the negligence of fellow-servants. The want of proper care and attention on the part of the conductor and engineer of the train upon which plaintiff was riding at the time of the accident, was one of the risks attending his employment. The particular labor in which he was engaged involved the use of the very cars and locomotive to which the accident causing the injury occurred, and it seems to us therefore clear that under the particular circumstances of this case the conductor and engineer were fellow-servants with plaintiff. (*Blake* v. *Railroad Co.* 70 Me. 60; *Russell* v. *Railroad Co.* 17 N. Y. 134; *Howland* v. *Railroad Co.* 54 Wis. 226; *Dallas* v. *G. Col. & S. F. Ry. Co.* 61 Tex. 196; *Abend* v. *T. H. & I. R. R. Co.* 111 Ill. 202; *Prather* v. *Richmond & D. R. Co.* 80 Ga. 427 ; 12 Am. St. Rep. 263.) There is a respectable line of authorities, which adopting the superior-servant criterion, hold that a conductor or engineer and employés subject to their direction and control are not fellow-servants, and such are the authorities cited by respondent's counsel;

but they have no application to the facts in this case. The plaintiff here was in no way working under the direction and control of either the conductor or engineer.

What has been said in reference to the conductor and engineer being fellow-servants of plaintiff, for whose negligence in the operation of the train defendant would not be liable, is only intended to apply to the charge of negligence in the operation of the trains, and not in any way to infringe upon the well-settled doctrine that the fact that the negligence of a co-servant caused the injury will not relieve the master from liability, if its own negligence contributed thereto, and if the negligence of its co-servant would not have caused the injury but for the concurrent negligence of the master. (McKinley Fel. Serv. § 16; *Grand Trunk Ry. Co.* v. *Cummings,* 106 U. S. 700; *Rogers* v. *Leyden,* 127 Ind. 50; *Stringham* v. *Stewart,* 100 N. Y. 516; *Benzing* v. *Steinway,* 101 N. Y. 547; Wood Mast. & Serv. § 405.)

The defendant by its answer and evidence among other defenses claimed that the accident by which plaintiff was injured was occasioned by an unusual and extraordinary flood which had arisen during the night and morning preceding the accident, and without any fault or negligence on its part the bridge was so undermined and weakened by the flood as to give way under the train on which plaintiff was riding, thereby causing the accident. Upon this theory of the case, the court was requested to instruct the jury as follows: "If the jury believe from the evidence that on the afternoon or evening of the day previous to the fall of the bridge in question, the same was in safe condition for the passing of trains thereover; that trains had so passed thereover without any evidence or indication of weakness of the bridge; that the bridge had been examined on the day previous to the accident by the bridge foreman Neff, and that the same was found to be and was in safe condition for the passage of trains, and trains had so passed thereover thereafter with safety; and that thereafter and during the night an unusual fall of water occurred, causing an

extraordinary and unusual freshet, whereby during the night the bridge had become undermined; and that this freshet was of such a nature that it was unusual and extraordinary at the place, and of such a nature that the jury would say from the evidence that defendant could not by the exercise of ordinary and reasonable diligence have anticipated the same, then your verdict should be for the defendant."

By this request the court was asked to instruct the jury in effect that if during the night preceding the accident the bridge had become undermined by such an unusual and extraordinary flood as could not by the exercise of ordinary care and reasonable diligence have been anticipated by defendant, the plaintiff could not recover

The measure of the duty of a railroad company in constructing and keeping its ways, machinery, track, rolling stock and plant free from dangerous defects, is such care and diligence as a cautious and prudent man would exercise under the same circumstances. In the location and erection of bridges and trestles, regard should be had to the size and character of the stream, the declivity and extent of the water-shed, the nature of the surrounding country, and any other circumstances which would probably affect the flow of the water. They should be so constructed as not to be insufficient and insecure in cases of usual and ordinary floods incident to the particular section of the country; but they are not bound to provide against extraordinary and unprecedented floods which could not reasonably have been foreseen or anticipated by competent and skillful persons. (*Columbus, etc. R. R. Co.* v. *Bridges,* 86 Ala. 448; 11 Am. St. Rep. 58; *Gates* v. *Southern Minn. Ry. Co.* 28 Minn. 110; *International & G. N. R. Co.* v. *Halloren,* 53 Tex. 46; 37 Am. Rep. 744.)

But if the defective condition of the bridge in this case was caused by a sudden and unprecedented freshet, as defendant claims, such fact would not relieve the defendant from liability if it had time in the exercise of reasonable care and attention to discover the injury to the bridge before

the accident; and whether it did or did not have such time, was a question of fact for the jury which this instruction would if given have taken from them. It was the duty of the defendant to make as frequent and careful inspection of its track as could be done consistently with the conduct of its business; and under circumstances of more than ordinary peril, as in the case of violent and unprecedented storms, it was its duty to inspect its line with more than ordinary promptness and thoroughness, and in particular to examine such portions of it as were particularly liable to injury by storms. (*Central etc. Co.* v. *Kent*, 84 Ga. 351; Patterson Ry. Acc. § 286.) The fact that the defendant did not know of the defective condition of the bridge at the time of the accident does not necessarily exonerate it from liability, if by the exercise of reasonable care and inspection it could have discovered and remedied the defects or avoided the danger incident thereto. (*Benzing* v. *Steinway*, 101 N. Y. 547.) It was bound to know the condition of this bridge so far as proper inspection would have enabled it to know. "It is enough to prove that the materials were defective in such respect that if proper inspection had been maintained the defects would have probably been ascertained in time to have prevented the injury." (Sh. & Red. Neg. 223.) In Wood's Mast. & Serv. § 346, it is said: "The fact that the defect might have been ascertained by proper examination and care on the master's part, is sufficient evidence of negligence to charge him with liability."

When this bridge became unsafe and insecure, does not clearly appear from the evidence, but probably some time during the night preceding the accident, although the evidence of plaintiff tended to show that it was out of repair and the foundation considerably undermined two or three days before. Certain it is, from the record before us, the court could not say as a matter of law that the injury to the bridge was of so recent an occurrence that the defendant by the exercise of reasonable care and prudence could not have discovered it and averted the accident, or that the

defendant exercised proper care and oversight over the road under the circumstances. It had but one track-walker on this section of the road, whose duty it was to pass over the road during the night, and he had not been over this bridge for forty-eight hours before the accident; and we think it was a question for the jury to say whether under these circumstances, with such extraordinary storms prevailing, it was negligence for the defendant to send out the train upon which plaintiff was being carried without making any investigation to ascertain the condition of the bridges over which it was to be carried.

The refusal of the court to permit defendant to submit to the jury propositions of fact embodied in a series of questions for answer by the jury, is also assigned as error. By section 215, Hill's Code, it is provided that the court may in all cases instruct the jury if it render a general verdict to find upon particular questions of fact to be stated in writing. Under this provision it was held in *Swift* v. *Mulkey*, 14 Or. 59, that it was discretionary with the trial court whether the jury shall be required to find on any particular question of fact in addition to the general verdict; and that this court will not undertake to review the rulings of the trial court thereon.

Counsel for defendant seeks to avoid the decision in the case above cited by claiming that the propositions submitted in the case at bar come within the terms of section 240, which provides that "Any party may, when the evidence is closed, submit in distinct and concise propositions the conclusions of fact which he claims to be established, or the conclusions of law which he desires to be adjudged, or both. They may be written and handed to the court, or at the option of the court, oral, and entered in the judge's minutes"; and that under this section the right to submit such propositions is an absolute one, and not subject to the discretion of the trial court.

The proper interpretation of the language of this section, when applied to jury trials, is difficult to determine. It

requires that the conclusions of fact which a party claims to be established by the evidence shall be submitted in distinct and concise propositions. It does not seem to contemplate that the jury shall be required to determine whether such conclusions are correct or not. It is probably the intention of the section to permit any party, when the evidence is closed, to submit in distinct and concise propositions the conclusions of fact which he claims to be established for the purpose of informing the jury of his claim and aiding them in arriving at a general verdict. But be this as it may, we do not think it was the intention of this section to give a party an absolute right to have the jury answer particular propositions of fact, embodied in a series of questions. Such a construction would have the effect to deprive the court of the discretionary power given by section 215. The presiding judge, we think, has the right, in all cases, to determine whether the jury shall be required to make special findings, and a refusal on his part to submit particular questions for their answer cannot be assigned as error in this court. If the court were obliged to require the jury to render a special verdict, or make special findings, whenever demanded, no doubt the right would be abused, as the books show has been done in states where by statute the right is absolute by demanding that the jury should answer an infinite series of questions, the object and tendency of which would be to confuse, embarrass and confound the jury, instead of eliciting the facts upon which the rights of the parties depend. Nothing in the language of Mr. Justice THAYER, in *Smith* v. *Shattuck*, 12 Or. 362, conflicts in any way with the conclusions we have reached. There are no doubt many cases in which a special verdict or special finding on particular questions of fact would be a most valuable aid to a correct determination of the rights of the parties. By requiring the jury to pass separately and specifically upon each controverted question of fact material to the issue, in many important cases a more careful and methodical consideration of the testimony

by the jury may be secured, and the precise grounds upon which the general verdict is based will be disclosed. But in what cases and under what circumstances such special verdict or findings shall be required must rest in the sound discretion of the trial court.

There are many other assignments of error contained in the record, but the length this opinion has already necessarily attained forbids our examining them further. An exception was reserved to every instruction asked by defendant and refused, and to every instruction given by the court except those given on defendant's motion. The instructions and requests for instructions excepted to embrace thirty-three separate and distinct propositions of law, and cover seventeen closely printed pages of counsel's brief, and are, many of them, we think, inapplicable to the issues made by the pleadings. We have neither the time nor the inclination to enter upon a critical examination of the legal principles sought to be announced in every one of them. To do so would require us to write a treatise on almost every phase of the law governing the liability of a master for an injury to his servant. This task we must at this time decline to undertake. But in view of the record in this and other cases which have been before us, we cannot refrain from quoting with approval the language of Mr. Justice SCOTT, in *Adams* v. *Smith*, 58 Ill. 419, who, in discussing the mischievous practice of requesting the court to give a multitude of instructions, says: "We do not understand why it is that counsel, where they have a good cause, will seek to encumber it with such a multitude of instructions, the almost invariable effect of which is to introduce manifest error into the record. Such a practice does not enlighten the minds of a jury on the issues submitted to them, but rather tends to introduce confusion. Instructions should always be clear, accurate and concise statements of the law applicable to the facts of the case. It was never contemplated under the provisions of the practice act that the court should be required to give a vast number of instruc-

tions amounting in the aggregate to a lengthy address.  It is a mischievous practice and ought to be discontinued.  A few concise statements of the law applicable to the facts are all that should be required, and are all that can serve any practical service in the elucidation of the case."  In *State v. Mix*, 15 Mo. 159, on an indictment for passing counterfeit bank notes, where the trial court only gave six different instructions, the supreme court felt called upon to say:  "A few plain propositions embracing the law upon the facts of the case are greatly to be preferred in every case to a long string of instructions running into each other and involved in intricacies requiring as much elucidation as the facts of the case themselves."  If counsel and the trial courts would confine the evidence to the issues made by the pleadings, and the instructions to a few clear, accurate and concise statements of the law applicable to the facts as understood by the court, this court would be relieved of much unnecessary labor, lengthy opinions would be avoided, and the necessity for reversals would exist in few cases.

Judgment reversed and new trial ordered.