[Argued October 20, 1892; decided November 28, 1892.]

## TROY LAUNDRY CO. v. M. E. HENRY ET AL.

[S. C. 31 Pac. Rep. 484.]

SALE—IMPLIED WARRANTY.—An implied warranty of an article will not extend beyond the article itself to other articles or appliances connected therewith, even though included in the same order and bought at the same time; the implication is that the article sold is reasonably fit for the purpose for which it was designed, and if this article is broken, or fails to accomplish its purpose, through the defect or inappropriateness of other articles with which it is used, the warranty is not broken.

WARRANTY — EVIDENCE.—Where a written order was in this form, " 1 18-roll body ironer, $175.00; 1 No. 26 extractor, $200.00; 1 pressure blower, $15.00 ; shaft, 1⅜ in.; body ironer to run at 150; shaft for extractor, 1¾, run 150, and pulleys " (for which $7.30 were charged); it was held to be a several order, and that each article separately was impliedly suitable for its intended use ; but the pulleys were not part of the ext. .ctor, and the implied warranty of one did not extend to the other; hence in a suit on a note for the extractor and pulleys, where the defense was a breach of warranty on the extractor, evidence of defects in the pulleys was not competent.

PLEADING.—ANSWER.—The object of an answer is to plainly notify the court and the opposite party of the facts relied upon as a defense, so that the defendant may be prepared to meet them if he can. The testimony must then be confined to the allegations. *Knahtla* v. *Oregon Short Line Ry. Co.*, 21 Or. 142 (27 Pac. Rep. 91), approved.

Multnomah County: E. D. SHATTUCK, Judge.

Plaintiff appeals.    Reversed.

*Edward B. Watson (James F. Watson* of counsel), for Appellant.

*Wm. M. Gregory* and *Cleland & Cleland,* for Respondents.

MOORE, J.—Appellant brought this action to recover the sum of two hundred and seven dollars and thirty cents with interest on a promissory note of respondents, and the further sum of one hundred and seventy-five dollars with interest on an account for the price of a body ironer sold and delivered to them.

The respondents in their answer, after denying the allegations of the complaint, for a separate defense to the cause of action on the note aver that the same was

given for the price of an extractor, a piece of laundry
machinery; that the same was purchased under an ex-
press warranty that it would do good work and keep in
repair for the period of one year; that in consequence of
its faulty construction, it broke and became of no value,
whereupon they rescinded the contract of purchase and
notified appellant.  For a second defense they aver an
express warranty of the said extractor, the breach
thereof, and an accord and satisfaction.  For a third
separate defense they aver facts showing an implied war-
ranty of the said extractor, and then allege " that said
extractor was delivered to defendants on or about the
fifteenth day of October, 1889, and put in operation in
their said laundry, and attempted to be used for the pur-
pose of extracting water from the clothes after the same
had been washed; that said extractor proved to be im-
perfect, and not properly constructed, and unsuitable for
the purpose of extracting water from clothes; that said
extractor would and did, without fault of the defendants,
run unevenly and out of balance, and was not efficient or
suitable for use as a machine for the purpose of extract-
ing water from clothes "; that said extrac.or was so imper-
fectly made and constructed that when run and operated
at the speed and under the conditions fixed and indicated
by the plaintiff, it did, without fault of the defendants,
and within less than four months from the "time it was
put in operation by defendants, break, go to pieces, and
become wholly useless and worthless for the purpose of
extracting water from clothes after the same had been
washed; that the defendants managed and conducted said
extractor, when in operation, at all times carefully and
according to the plan and design of working and man-
aging the same as indicated and directed by the plaintiff."
They then aver a total failure of the consideration, and
that in consequence thereof they have been damaged in
the sum of two hundred and seven dollars and thirty
cents, which they ask to offset against the claim of the
plaintiff.

For a separate answer to the cause of action for the price of the body ironer, they aver an express warranty, a breach thereof, and rescission.   For a second separate defense they aver facts showing an implied warranty of the body ironer, a breach thereof, and a total failure of the consideration, to their damage in the sum of one hundred and seventy-five dollars, which they pray may be offset against the purchase price.   The reply put in issue all the new matter of the answer, a trial was had, and verdict and judgment for the defendants rendered; whereupon the plaintiff appealed, assigning as error the admission of certain testimony, and the failure of the court to give certain instructions asked by plaintiff.   At the trial all evidence of any express warranty was excluded for the reason the machinery was purchased upon a written order, of which the following is a copy:—

*Troy Laundry Machine Company (Limited):*

No. of Order.                               Salesman, May.

SAN FRANCISCO, October 1, 1889.

Please ship f. o. b. the following machinery and supplies via steamer, for which we agree to pay four months' note.                   CASCADE STEAM LAUNDRY,

HENRY BROS., Proprietors.

Portland, Oregon.

1 18-roll body ironer_____$ 175 00
1 No. 26 extractor_____  200 00
1 pressure blower_____   15 00
Shaft, 1⅜ inch; body ironer to run at 150; shaft for extractor 1¾, run 150, and pulleys for same.

CASCADE LAUNDRY,
Per M. E. HENRY.

It should be added also that when the order was filled, seven dollars and thirty cents was charged for the pulleys; and the note for two hundred and seven dollars and thirty cents represents the price of both the extractor and the pulleys that connected it with the shaft.

The principal contention of the appellant is that the order is for separate articles; the extractor is one thing and for a separate price, and the pulley is another and for a distinct price; and the contract, therefore, in respect to the price in the order, is several.    Based on this view, it claims in effect that unless the extractor is defective itself, and by reason thereof unfit for the purpose for which it was designed, and so went to pieces, it is only liable for a breach of implied warranty arising out of the facts; that the extractor and pulley cannot be considered as constituting one machine; that the pulley was no part of the extractor itself, and this being so it cannot be included in the implied warranties that the extractor was reasonably suitable for the purpose of the design; but the obligation of the appellant as to each is separate and distinct.    Hence it claims that if the pulley was too large, and caused the extractor to revolve too rapidly, and that by reason thereof it broke and became utterly useless, it was not in consequence of any defect in the extractor itself, and therefore it is not liable for a breach of any implied warranty of the extractor, but only for the damages the respondents have sustained by reason of its negligence in furnishing them an unsuitable pulley to operate the extractor.

Testimony was offered by the defendants, tending to show that the extractor broke in consequence of a too high rate of speed caused by the pulley furnished by plaintiff upon the written order, and attached to the line shaft, upon the theory that the pulley was a part of the extractor, since no price was fixed therefor, and that it and the extractor were an entire contract of purchase To hold that a pulley was a part of a machine complete within itself, because it was attached to a shaft and was necessary in communicating power from the engine, presumably by a belt to the machine, would be to hold that because this pulley was connected with the engine, therefore the machine was a part of the engine.    We do not think the pulley would be a part of the extractor if both

were ordered at the same time and included in one pur-
chase price.   The contract might not have been sever-
able, but the machine and pulley would be.   Because a
person bought a horse, buggy, and harness for a gross
sum, does not make the harness a part of the buggy nor
the buggy a part of the horse.   As an entire contract,
however, the purchaser who had agreed to buy these for
a gross sum would be entitled to a delivery of all before
an action could be maintained for a part.   In *Griggs* v
*Stone*, 51 N. J. Law, 549 (18 Atl. Rep. 1094; 7 L. R. A. 48)
the court held that engraved copper shells used . on a
mandrel of a printing machine for the purpose of print-
ing cloth were not a part of such machine, though no
printing could be done without them.   In that case the
court says :   "The test by which this question should be
determined is the inquiry whether the shells are essential
to the completeness of the machines for the purpose for
which the machines were designed."

Applying this rule to the case at bar, the pulley on
the line shaft, though necessary to communicate power
to the extractor, was no part of that machine.   Each
machine complete within itself must be governed by the
implied warranties applicable thereto, and they could not
be united so as to make one a part of the other except by
an express contract.   The implied warranty of the pulley
was that it should be of the proper size, and reasonably
fit for the purpose, so that when attached to the line
shaft it should communicate sufficient velocity, and no
more, to the machine operated thereby ; and if the pulley
furnished by appellant failed to do this, the breach is of
the implied warranty of the pulley, and not of the ex-
tractor.   This was a piece of laundry machinery com-
plete within itself.   The implied warranty was that it
should be reasonably fit for the purpose for which it was
designed, and any failure to perform this part of the
implied warranty would be a breach thereof.   The fact
that the extractor was injured or destroyed by the
defective pulley does not prove that the extractor was

not reasonably fit for the purpose for which it was designed. Had the order for the extractor included an order for a boiler to furnish steam as a motive power with which to operate it, and under an entire contract at that, and had the boiler, in consequence of its faulty construction, exploded and destroyed the extractor, would any person claim that the extractor was broken in consequence of its faulty construction ?

Respondents claim that under the allegations of their answer "that they operated the extractor at all times carefully and according to the directions of the appellant," they could introduce testimony tending to show that the pulley was too large. It seems to us that the issues were not broad enough to cover this. The object of the answer is to notify the court and the opposite party of the facts relied upon as a defense so plainly that the plaintiff may be prepared to meet them. In *Knahtla* v. *Oregon Short Line Ry. Co.* 21 Or. 142 (27 Pac. Rep. 91), BEAN, J., speaking for this court says: "The object of a pleading would be entirely defeated if a plaintiff had the right to aver in his declaration one ground of action, and on the trial prove another and different one."

At the close of the testimony, plaintiff requested the court to give the following instruction: "The defendants in their answer aver that the extractor broke down by reason of its faulty construction, but there is no issue in the pleadings as to its being speeded too high, and you cannot consider any evidence on that point." This instruction was refused by the court, and plaintiff excepted. We think the refusal to give this instruction was error, and for that reason the judgment must be reversed and a new trial ordered.