## CLEM *v.* THE STATE.

CRIMINAL LAW.—*Evidence.— Venue.*—If in a criminal case there be no evidence that the offense charged was committed within the jurisdiction of the court, there should be an acquittal.

SAME.—*Admissions on the Trial.—Bill of Exceptions.*—In a criminal case, the court, in its instructions, told the jury, that the defendant had, during the progress of the trial, admitted certain important facts, and that the facts thus admitted must be taken as if proved beyond a reasonable doubt. A bill of exceptions, purporting to contain all the evidence, was silent as to such admissions having been made.

*Held,* that, as the record stood, there was no warrant for this statement of the court.

SAME.—*Jury.—Instructions to.—Right of to Determine the Law.*—The court in such case also instructed the jury, that it was their *duty* to apply the law, as given by the court, to the facts of the case; that they might determine the law for themselves, however; but that they should be *well satisfied in their own minds* of the incorrectness of the law as given by the court before assuming the responsibility of determining it for themselves.

*Held,* that this was error.

SAME.—*Irrelevant Instructions.*—Instructions to the jury should be applicable to the evidence.

SAME.—*Presumptions.— Use of Deadly Weapon.— Contradictory Instructions.*—The intent to murder is not conclusively inferred from the deliberate use of a deadly weapon; and the error of giving an instruction to the jury to that effect on the trial of an indictment for murder, at the instance of the prosecution, is not cured by giving a contradictory and correct charge upon that subject at the request of the defendant.

SAME.—*Apparently Conflicting Instructions.*—In a criminal case, the court, instead of giving to the jury instructions which are apparently conflicting, though not so intended, and leaving the jury to conjecture which of them should be applied to a given state of facts, should generally tell the jury the state of facts to which the proposition of law announced is applicable.

APPEAL from the Warren Circuit Court.

The appellant was indicted for murder in the first degree. Upon a plea of not guilty, the jury found him guilty of manslaughter, and that he be confined for three years in the state's prison.

The court overruled a motion for a new trial and a motion in arrest of judgment, and rendered judgment in accordance with the verdict.

The evidence tended to prove that the appellant, in an altercation with one James H. Beckett, inflicted wounds with a knife, from which Beckett soon afterwards died.

FRAZER, C. J.—This case must be reversed for various reasons.

There was not a particle of evidence that the offense charged was committed within the jurisdiction of the court below. This, doubtless, was an oversight, but without such evidence there should have been an acquittal.

Then the court in its instructions told the jury, that the defendant had, during the progress of the trial, admitted certain important facts, and that the facts thus admitted must be taken as if proved beyond a reasonable doubt. Now, if such admissions were made, they were evidence, and yet a bill of exceptions purporting to contain all the evidence is wholly silent as to such admissions having been made. We must look to the bill of exceptions for the evidence, and (though we may apprehend that there was an oversight in this respect in making it up) we are compelled to hold, as the record stands, that there was no warrant for the statement of the court.

But, to come to what may be deemed the merits of the

case.  The jury was. instructed that it was their *duty* to apply the law, as given by the court, to the facts of the case; that they might determine the law for themselves, however; but that they should "*be well satisfied in their own minds* of the incorrectness of the law as given by the court before assuming the responsibility of determining it for themselves."  This instruction, carefully analysed, is in direct conflict with the provision of the Constitution of the State, that "in all criminal cases the jury shall have the right to determine the law," and with the oath of the jury, by which each juror binds his conscience to render a true verdict according to law.  Now, the jury in this case were told, in effect, that the law as given by the court must be their inflexible guide, though, tested by their best judgment, it was erroneously given—unless it was quite clear to their minds that the court was wrong.  In other words, they must be "well satisfied" that their own opinion of the law was correct before they could act upon it, if the court had expressed a different opinion.  The result of this would be, in some cases, that a jury would be compelled to bring in a verdict not in accord with its own judgment of the law— that, though by express provision of the Constitution it is made the judge of the law of the case, it must, nevertheless, be governed, sometimes, by the opinion of the judge, notwithstanding that differs from its own.

The judge is required by statute, in criminal cases, to instruct the jury in the law.  The consistent theory is, that this is for the information of the jury, to aid it in forming an opinion for its own guidance.  If the judge adorns his high place by his learning and impartiality, his juries will be apt to rely upon his instructions, because they will deem them correct.  They may reasonably rely upon him as a trustworthy source of information concerning the law, as they would upon a truthful witness concerning the facts— not because any rule of law requires that they must, but because their own common sense suggests the credit due to

the legal opinions of·such a judge. But, on the other hand, a magistrate destitute of character for either knowledge of ·the law or uprigtness in its administration, and who so deports himself during the trial as to destroy confidence in his fairness, will not be so apt to command the confidence of his jury. He would not be worthy of it. Distrust would, in such a case, result from the exercise of sound judgment. The constitutional provision means, that in criminal cases juries shall be free to exercise this judgment. It does not proceed upon the presumption that all judges know the law and will impartially declare it, but, on the contrary, its necessity was suggested by circumstances which proved that this was not true. Judges had, in England, stained the ermine by using their position to secure the conviction of citizens in defiance of law, to serve the purposes of party. It might be done again, and here. We were entering upon the experiment of an elective judiciary, under which judges might be chosen for partizan services, and might be too ready to serve the interest that had given them position. Criminal prosecutions had ever been a favorite resort of those in power in times of high excitement. It would be some security against possible abuses, to put the ultimate function of judgment of the law as well as the facts in the hands of the jury, drawn from the body of the county; and hence it was done. It is enough that it is so written. The courts have no authority to modify it, for that would be to defeat, in a measure at least, the end which it was designed to secure. It is too plain for construction, and if evils shall result from giving it full effect, the appropriate remedy must be sought elsewhere than in the courts.

It is true, that upon this subject a correct instruction was given at the request of the defendant. But that did not repair the error. Contradictory instructions would, if allowed, make the trial by jury a most mischievous institution.

The seventh instruction given at the request of the prosecution should have been withheld, for the reason that there

was no evidence at all to which it could be properly applied. If it had any effect, it must have been to confuse the jury.

The following was given at the request of the prosecution:

"6. Every sane man is conclusively presumed to contemplate the natural and probable consequences of his own acts; and, therefore, the intent to murder is conclusively inferred from the deliberate use of a deadly weapon."

This, though transcribed from an approved text-book (1 Greenl. Ev. § 18), is not sustained by the authorities which the writer cites in its support. It is entirely at variance with principles which have received the uniform sanction of all the courts in this country and Great Britain. It is a great inaccuracy, and it is strange that a book which has passed through so many editions should still contain it. A conclusive presumption admits of no proof to rebut it; and murder is a felonious killing. Such is the technical as well as popular meaning of the significant terms used in the instruction. The purport of it, then, is, that if the defendant killed the person named by the deliberate use of a deadly weapon, no evidence to show that the act was done in his necessary self-defense can be sufficient to rebut the presumption, or to prove that the killing was excusable and not felonious. Evidence for that purpose was offered and admitted; and, indeed, that seems to have been the defense relied on. It can therefore be readily seen how fatal to the rights of the defendant this charge was, if followed by the jury. Nor was this error cured by giving a contradictory and correct instruction upon the subject, at the request of the defendant.

We find occasion in this case to say that the practice of giving apparently conflicting instructions, though not really so intended, and leaving the jury to conjecture which of them should be applied to a given state of facts, is not favorable to the correct adminstration of justice. The court should generally tell the jury the state of facts to which the proposition of law announced is applicable. Then there

will be no seeming conflict in the instructions, to embarrass, confuse, and mislead. In this case, the court remarked to the jury, that "it may appear to you that there is some conflict; but it is necessary to submit to you the law as it might be applicable to the different views of the evidence as to the facts in this case, which it is the exclusive province of the jury to determine; and it will, therefore, be your duty to construe all the instructions together." This appearance of conflict should have been avoided as we have suggested; and then the task of construing the instructions together would have been possible and easy. We need not lengthen this opinion by specifying the particulars doubtless alluded to by the judge below, which called for these observations upon the subject.

Reversed, and remanded for a new trial. Prisoner to be returned.

*D. W. Voorhees, T. F. Davidson,* and *J. McCabe,* for appellant.

*D. E. Williamson,* Attorney General, for the State.