## Kingen *v.* The State.

CRIMINAL LAW.—*Murder.—Manslaughter.—Justifiable Homicide.—Instruction.*—On the trial of an indictment for murder, where there is evidence tending to show that the defendant acted in self-defence, it is error to instruct the jury that if the death of a human being be produced by a deadly weapon in the hands of another, the presumption is, that the party using such weapon intended, and is guilty of murder, and that to remove this presumption and reduce the killing to manslaughter, it devolves on the defendant to show that it was under great provocation, such as endangered the life of, or would have resulted in great bodily harm to, the party using such weapon.

Kingen *v.* The State.

SAME.—The use of a deadly weapon, resulting in homicide, under circumstances that endanger the life of the person using such weapon, or would result in great bodily harm to him, will justify the killing.

INSTRUCTION.—An erroneous instruction cannot be corrected by another instruction, which may state the law accurately, unless the erroneous instruction be thereby plainly withdrawn.

From the Hancock Circuit Court.

*H. J. Dunbar*, *D. S. Gooding*, and *J. A. New*, for appellant.

*J. C. Denny*, Attorney General, for the State.

WORDEN, C. J.—Harrison Kingen, the appellant, and his wife, Lucinda, were jointly indicted for the murder of Samuel Derry, by stabbing and mortally wounding him with knives. The defendants were tried separately, and Harrison was convicted of manslaughter, and sentenced to imprisonment in the State's prison for the term of two years. A motion for a new trial was duly made, but overruled, and exception taken.

Evidence was given, from which the following facts might be inferred: Lucinda was the sister of the deceased. Kingen and the deceased, with their respective families, lived in the same neighborhood. There seems to have been a good deal of ill feeling between Kingen and the deceased, but the origin of it does not very clearly appear. The deceased had made frequent threats to kill the appellant, having a pistol, which he carried at times. The deceased was a larger and stronger man than the appellant. The appellant, though he also had made some threats in reference to the deceased, evidently manifested a disposition to avoid him and any controversy with him. On one occasion, the deceased and the appellant were about to meet each other on the highway, when the appellant thinking, perhaps, that "discretion was the better part of valor," climbed the fence and thus avoided the meeting. Before the homicide, the appellant was advised that the deceased had threatened to take his life.

On the evening of the homicide, the appellant and his wife were passing the house of the deceased, when something of

no great importance was said about turkeys or goslings, or perhaps both, about which there seems to have been some dispute or misunderstanding between the parties. The deceased went out into the street and followed the appellant and his wife up, overtaking them about thirty or thirty-five yards from his gate. The appellant, it seems to us from the evidence, was trying to get away and avoid any diffiulty, but was overtaken by the deceased. It may well be inferred from the evidence that the deceased attacked the appellant, striking him with a brick-bat, or perhaps a club, and knocking him down. During the combat, the deceased received five wounds with a knife, one of which proved fatal, and of which he died three or four days afterward. This summary statement is sufficient to show the nature of the case, to which the charges of the court were applied.

The court gave the following, amongst other charges:

"10. A sane person is presumed to intend the natural and probable consequences of his own acts, and the use of a deadly weapon by a sane person, from which the death of a human being ensues, creates the presumption that murder was intended.

"11. If the death of a human being has been produced by a deadly weapon in the hands of another, the legal presumption arises, that the party thus using the weapon intended and is guilty of murder, and in order to remove this presumption and reduce the killing to manslaughter, it devolves upon the defendant to show that it was under very great provocation, such as endangered the life of, or would have resulted in great bodily harm to, the party thus using such deadly weapon."

We think the eleventh charge was clearly wrong, as applied to the evidence, and may have misled the jury. The clear meaning of the charge is, that if death resulted from the use of a deadly weapon by the defendant, though to repel an attack made by the deceased upon the defendant which endangered his life or which would have resulted in great bodily harm to him, the homicide, though it might be

reduced to manslaughter, would nevertheless be criminal. In other words, the charge signifies that the circumstances enumerated would only reduce the grade of the crime from murder to manslaughter.

It seems to us, however, that the circumstances enumerated in the charge would render the defendant guiltless of any crime, and entitle him to an acquittal. The doctrine in relation to self-defence is thus stated by Mr. Bishop, 1 Bish. Crim. Law, 5 ed., sec. 865: "This right of self-defence is commonly stated in the American cases thus: if the person assaulted, being himself without fault, reasonably apprehends death or great bodily harm to himself, unless he kills the assailant, the killing is justifiable." There are numerous cases cited in a note in support of the text. See, also, Whart. Crim. Law, sec. 1019.

Other objections are urged to the charge, but as the one above pointed out is fatal, we need not notice the others. Another charge was given on the same subject which may be less objectionable than that above set out. But the above was not in any way withdrawn from the jury. In the case of *Bradley* v. *The State*, 31 Ind. 492, it was held that an erroneous instruction cannot be corrected by another instruction which may state the law accurately, unless the erroneous instruction be thereby plainly withdrawn from the jury. The effect of conflicting instructions can only be to confuse the jury, and as they must follow one or the other, it is impossible to determine whether the influence of the court in such a case has been exerted for good or evil. See, also, *Clem* v. *The State*, 31 Ind. 480.

Other instructions are complained of, and other questions made, but we pass them, inasmuch as the questions may not arise upon another trial of the cause. The judgment will have to be reversed for the error above noticed.

The judgment below is reversed, and the cause remanded, for a new trial. The clerk will give the proper notice for return of prisoner.