## THE TOLEDO WABASH, AND WESTERN RAILWAY COMPANY v. SHUCKMAN, ADM'R.

RAILROAD.—*Duty of Person Crossing Track.*—*Instruction.*—In an action against a railroad company for an injury causing the death of a person while passing over the track of the defendant at a highway crossing, it was error to instruct the jury that it was the duty of the deceased " to make such use of his eyes and ears, and all his faculties, as would enable him to avoid danger, provided the managers of the railroad train were doing their duty; if he did that he was free from blame." (WORDEN, J., and DOWNEY, J., dissented.)

SAME.—It is the duty of a person about to cross a railroad track to use his faculties to his utmost ability, in proportion to the danger impending, whether the managers of the railroad train are doing their duty or otherwise.

INSTRUCTION.—*Error.*—An erroneous instruction cannot be corrected by another instruction which may state the law accurately, unless the erroneous instruction be thereby plainly withdrawn.

From the Huntington Common Pleas.

*W. Z. Stuart,* for appellant.

*W. G. Colerick* and *H. Colerick,* for appellee.

BIDDLE, J.—This case was brought by Jacob Shuckman against the Toledo, Wabash, and Western Railway Company, for killing George Shuckman and his two horses, and breaking his wagon, of whose estate Jacob Shuckman is the administrator.

After the proper introduction, the complaint charges : " That the defendant, at the time hereinafter mentioned, was the owner and proprietor of a certain railroad, known as ' The Toledo and Wabash Railway Company,' together with the track, cars, locomotives, and other appurtenances thereunto belonging. And also says, that heretofore, in the lifetime of said George Shuckman, deceased, on the 21st day of June, 1861, at said county, while he was travelling in his wagon drawn by his two horses, along and over a public highway leading from the city of Fort Wayne, in said county, to Madison township, in said county, where he then resided, which public highway crosses the track of said railroad on or near the township line, at. Fletcher's farm, in the vicinity of said

The Toledo, etc., R. W. Co. v. Shuckman, Adm'r.

city, and, as he had reached said crossing, the defendant carelessly and negligently caused one of their locomotives, with a train of cars attached thereto, to approach said crossing, and then and there to pass at a great and unusual rate of speed over the track of said railroad, and without proper care, and negligently and carelessly omitted, while so approaching said crossing, to give any reasonable, timely, or proper signal, by ringing the bell or sounding the steam whistle, at a reasonable and proper distance from said crossing, by reason whereof he was unaware of their approach; and that by reason of said negligence and carelessness of said defendant, and without any fault or negligence on his part, the said locomotive struck his horses and wagon on said crossing, thereby killing said horses and demolishing said wagon, and instantly killing the said George Shuckman;" also showing the appointment of the appellee as administrator, and praying judgment.

The answer was, 1. General denial, and paragraphs 2, 3, and 4, averring the culpable negligence of the deceased, charged in various ways.

Replies; issues formed; trial by jury; verdict for appellant, five thousand dollars; motion for a new trial overruled; exceptions; and appeal to this court.

The appellant assigns numerous errors, amongst them, that the court erred in giving certain instructions to the jury, more particularly those numbered 2, 3, and 4.

Instruction number 4 was expressed in the following words: " In considering this question, you will notice that Mr. Shuckman had a right to presume that the persons in charge of any train that might be approaching would do their duty and give notice of their approach to the crossing, by ringing a bell or sounding a whistle, long enough before reaching it to enable him to take such steps as might be necessary for his safety. And if you find that he exercised such a degree of care and caution when approaching the railroad as that he could see an approaching train at every point, when it was in his sight, and hear such signals as it was the duty of those in charge of the train to give, in time to avoid danger, and that he neverthe-

less remained ignorant of impending danger until it was too late to escape, it will be your duty to find that he was not guilty of negligence. ·It was his duty to make such use of his· eyes and ears, and all his faculties, as would enable him to avoid danger, provided the managers of the railroad train were doing their duty ; if he did that he was free from blame."

The fifth instruction is in the following words :  " The distinction I have above alluded to may be further illustrated by a comparison of the duties of those running the train and those driving the wagon.   Each had a right to presume that the other would exercise reasonable care, and each was bound to exercise that degree of caution which would in that case protect himself and others from danger.   Thus, the engineer and fireman were bound to run ˙their engine, and ring their bell, and blow their whistle, so that they would not endanger the lives of persons on the highway in the exercise of ordinary care.    And in like manner, the driver of the wagon was bound to use such a degree of caution as would avoid the danger of a collision with a train running at proper speed and announced by proper signals."

The last part of instruction number 4, which stands as an independent sentence, involves two meanings. It means, either that the decedent's duty to make use of his faculties, to avoid danger, depended upon the condition that the managers of the railroad were doing their duty ; or it means that his duty to make such use of his faculties beyond the point of danger to which he would be exposed, provided the managers of the train were doing their duty, depended upon the same condition.   The former meaning is the more obvious, but neither of these views is correct.    It was not only the duty of the deceased so to use his faculties, but to use them to his utmost ability in proportion to the danger impending, whether the managers of the railroad were doing ·their duty or otherwise. If we were, in either view, to give effect to the instruction as law, the appellee might recover, although the deceased was guilty of negligence, and had thus directly contributed to his own disaster.    The law is firmly settled otherwise.   See *The*

*Toledo and Wabash R. W. Co.* v. *Goddard*, 25 Ind. 185, and the cases there cited. See, also, *The Bellefontaine R. W. Co.* v. *Hunter*, 33 Ind. 335, and *The Jeffersonville, Madison, and Indianapolis R. R. Co.* v. *Bowen*, 40 Ind. 545.

If the deceased, while attempting to cross the railroad track, was guilty of negligence contributing to the injury, there can be no recovery by the appellee, even though the appellant, at the same time, was also guilty of negligence in crossing the public highway. The negligence of the appellant will not excuse the negligence of the deceased.

In the case of *Ernst* v. *The Hudson River R. R. Co.*, 39 N. Y. 61, the court says: " Negligence in the railroad company in the giving of signals or in omitting precautions of any kind, will not excuse his " (in this case the decedent's) "omission to be diligent in such use of his own means of avoiding danger. And where, by such use of his senses, the traveller might avoid danger, notwithstanding the neglect to give signals or warning, his omission is concurring negligence, and should be so peremptorily declared by the court."

In the case of *Beisiegel* v. *The New York Central R. R. Co.*, 40 N. Y. 9, the court approves the case last cited, and says: " The plaintiff was crossing the track on foot; and it would seem that the exercise of proper care on his part to protect himself would have enabled him to keep out of the way of the engine." See, also, *Pennsylvania Railroad Company* v. *Beale*, 73 Penn. St. 504.

But it may be said, that the fifth instruction being, in itself, unobjectionable, corrects the error of the fourth, to which it directly refers. We think otherwise. The fifth instruction does not correct, contradict, or in any manner change the fourth; it only professes to illustrate it. Besides, if the fifth instruction were correct, the fourth would not thereby be freed from error. *Sumner* v. *The State*, 5 Blackf. 579; Hilliard New Trials, 265; 3 Graham & Wat. New Trials, 774. And this court, in *Kingen* v. *The State*, 45 Ind. 518, expressly holds, that " an erroneous instruction cannot be corrected by another instruction which may state the law accurately, unless the

erroneous instruction be thereby plainly withdrawn from the jury." See, also, *Bradley* v. *The State*, 31 Ind. 492.

In *Clem* v. *The State*, 31 Ind. 480, this court uses the following language : " It is true, that upon this subject a correct instruction was given at the request of the defendant. But that did not repair the error. Contradictory instructions would, if allowed, make the trial by jury a most mischievous institution."

If this be the rule in criminal cases, where the jury, by the constitution, have a right to determine both the law and the facts, much stronger are the reasons that it should be the rule in civil cases, where the court exclusively is the judge of the law, and the jury only of the facts.

There are other errors assigned, but as we are compelled to reverse the case for error of law, and as it must be remanded for a new trial, in which they may not again arise, we do not decide them.

The judgment is reversed, with costs; cause remanded.

BUSKIRK, C. J.—I think that all of the fourth instruction, except the last sentence therein, was correct as matter of law and explicit in manner. The last sentence is in these words :

" It was his duty to make such use of his eyes and ears, and all his faculties, as would enable him to avoid danger, provided the managers of the railroad train were doing their duty ; if he did that, he was free from blame."

The first branch of the sentence is clear, explicit, and correct as matter of law. The question is whether the proviso so qualified what preceded it as to render it incorrect as matter of law and obscure as to its meaning. If the jury had the right to infer from the language used, that the failure of the managers of said railroad train to do their duty excused the plaintiff from using his eyes and ears and all of his faculties to avoid danger, then the instruction was clearly and unquestionably erroneous. In determining whether an instruction is calculated to mislead the jury and give them an incorrect view of the law, we should not consider how it would be

understood by a member of the legal profession, as it is a sufficient objection to it that it might convey to the mind of an unprofessional man of ordinary capacity an incorrect view of the law applicable to the cause. *Sumner* v. *The State*, 5 Blackf. 579; Hilliard New Trials, 265. The use of the word " provided " was well calculated to convey to the minds of the jurors that the plaintiff was required to use his eyes and his ears and all of his faculties to avoid danger only on the condition that the managers of the railroad train did their duty. To extract any other meaning from the language, would require a very critical analysis and a transposition of words. An instruction which requires such a process to arrive at its correct meaning is too obscure to be intelligible to unprofessional men of ordinary capacity. It is the duty of a judge to give such instructions as will enable the jury to have clear and intelligent notions of what they are to decide, and a correct view of the law applicable to what they are required to decide. Graham & Waterman on New Trials, p. 774, vol. 3, say:

" The jury must not be misled by the court in any manner. Whether, therefore, they are induced to find a wrong verdict, by a positive direction, or by being left to draw an erroneous conclusion from the proof, the consequences being the same, there is the same ground for a new trial. The charge must be not only correct, but so explicit as not to be misunderstood. If, from its obscurity, or the use of expressions that are misunderstood by the jury, it be misapprehended, so that erroneous inferences are drawn from it, a new trial will be granted."

Again it is said : " Clearness, as well as accuracy, in the charge, is of the first importance. If the instructions, though they may not be positively erroneous, are yet given in so slovenly and bungling a manner, as rather to make the case obscure than to throw light upon it, the jury, so far from being aided, are retarded and hindered, and often actually misled by the court, and the party aggrieved has just reason to complain."

The most of the instructions given by the court below

deserve commendation for their accuracy and clearness, but the fourth instruction, from some cause, is made to express what the learned judge did not intend. This is manifest from the other instructions. But this was not so understood by the jury. I do not think the fifth instruction corrected the fourth or removed the obscurity or ambiguity, if the court did not intend to charge as we have construed the instruction to mean. For this error, I think the judgment must be reversed.

WORDEN, J.—As I cannot concur in the view taken by the majority of the court in this case, I will state briefly the ground of my dissent. The fourth and fifth charges given to the jury have already been set out in the opinion of the majority of the court, and need not be here repeated. The decision is made to turn upon the last clause of the fourth instruction, which is as follows :

" It was his duty to make such use of his eyes and ears and all his faculties, as would enable him to avoid danger, provided the managers of the railroad train were doing their duty ; if he did that, he was free from blame."

I think the obvious meaning of this is, that it was his duty to make such use of his eyes and ears and all his faculties as would enable him, provided the managers of the railroad train were doing their duty, to avoid the danger; if he did that, he was free from blame. Thus construing the charge, it is unobjectionable. While I think the true meaning of the charge, as shown on its face and taken by itself, is as above indicated, this construction of it is confirmed and illustrated by the fifth charge.

In *Kirland* v. *The State*, 43 Ind. 146, 154, it was held by this court, that " in placing a construction upon the instruction complained of, it is our duty to look at all the instructions given on the same subject; and if the instructions taken together present the law correctly and are not calculated to mislead the jury, we should affirm the judgment."

DOWNEY, J.—I do not agree to the opinion of the majority

of the court in this case, but concur in the dissenting opinion of WORDEN, J.

## ON PETITION FOR A REHEARING.

BIDDLE, J.—We have had the petition for a rehearing in this cause under long and careful deliberation. It is urged upon us that, notwithstanding the erroneous instruction given, the judgment ought to be affirmed. Many cases are cited where this court has affirmed decisions over erroneous instructions, but in every case the whole record, considered together, showed plainly that the party complaining had not been injured thereby. That is the intrinsic difficulty in the present case. We cannot clearly see by the record that the appellant was not injured by the erroneous instruction complained of. On the contrary, we have strong reasons to believe, and much ground to fear, that the appellant was injured thereby. The evidence does not clearly establish the negligence of the appellant, and there is evidence strongly tending to show, if indeed it does not clearly prove, contributory negligence on the part of deceased. In such a case, it is our duty to reverse the judgment below, and give the parties another trial.

The petition is overruled, WORDEN and DOWNEY, JJ., dissenting.