[Argued February 2, 1893;  decided February 27, 1893.]

## CONLON *v.* OREGON SHORT LINE RY. CO.

[S. C. 32 Pac. Rep. 397.]

1. MASTER AND SERVANT — RISK OF EMPLOYMENT.—A shoveler employed by a railway company to assist in clearing an obstructed track assumes the risk of washed-out bridges and tracks, when these are caused by unusual storms which could not have been anticipated or provided against; but he does not assume this risk when the danger might have been discovered and averted by reasonable diligence and proper care.

2. IDEM — DEFECTIVE BRIDGE — UNUSUAL STORM.—A shoveler engaged by a railway company to assist in removing dirt and other obstructions from its track, where they have been washed by an unusual storm or freshet, does not assume the risk of the company's failure before the storm to keep in proper repair a bridge over which the train on which he is carried is required to pass, or to send out a trackwalker in advance of the

trains to ascertain the condition of the track or bridge after the storm, or to take such other due and precautionary measures to prevent accidents as may be required by the exigency of the situation.

3. NEGLIGENCE — QUESTION FOR JURY.—Whether it was negligence for a railroad company to send out a train loaded with workmen, without making any investigation as to the condition of a bridge over which the train must pass, is a question for the jury, there having been an unusually severe storm since it was inspected.

4. PRACTICE IN CHARGING JURY.—It is proper for the court, after examining the instructions submitted by the respective parties, where they are numerous and long, to charge the jury in its own language by a connected series of instructions fairly covering the material issues presented in the case.

Washington County: FRANK J. TAYLOR, Judge.

Action by Francis Conlon against the Oregon Short Line & Utah Northern Railway Company to recover damages for personal injuries sustained in a wreck on February 2, 1890, near Cascade Locks, on the line of plaintiff's road. Judgment for plaintiff, and defendant appeals. Affirmed.

*Zera Snow (Wm. W. Cotton* on the brief), for Appellant.

*Alfred S. Bennett*, and *S. B. Huston*, for Respondent.

LORD, C. J.—This is an action to recover damages for personal injuries received by the plaintiff while in the service of the defendant, and a former decision is reported in 21 Or. 462. The injury was caused by the wreck of a work train from the falling of a bridge over which the plaintiff was being carried on the line of the defendant's road. For a day or so prior to the accident there had been unusual storms, causing dirt and rock from the adjacent mountains to slide down upon the track and obstruct it at different places, so as to impede, and finally to stop, the passage of trains for several days. On the night before the accident the storm was accompanied by a heavy fall of warm rain, which, together with the melting snow, swelled the stream spanned by the bridge in question into a freshet. The officers in charge of the passenger train which had come down the night before

the accident, found a slide below the bridge, and, with the laborers accompanying that train, had undertaken to clear the slide, so that they might run the train through to Bonneville, but finding that they would be unable to clear the track of the slide that night, they backed the train up to Cascade Locks and sidetracked it, and during the night the heavy fall of warm rain occurred, which closed the road for traffic.   The next morning the plaintiff was engaged by the defendant as a shoveler to aid in removing the dirt and other obstructions from the track, and in pursuance of orders went on the work train with other shovelers for the immediate purpose of being carried down to this slide below the bridge, which had been discovered the night previous, to help remove it from the track ; and while being so carried over the bridge, it gave way and precipitated the train, with the plaintiff and other laborers, some twenty feet into the creek below. As to the cause of the bridge giving way, the evidence for the plaintiff tended to show that the foundation of the center bents had been gradually undermined by the action of the water in the creek for some time prior to the accident; that the bridge had settled, and at different times had been wedged up so that the bolts by which the stringers were fastened to the bents were drawn out of the bents, leaving nothing to hold them in place but the weight of the bents themselves.   It also appears from the evidence that the defendant had but one trackwalker on the eight-mile section of its road upon which this bridge stood, and that he had not been over this bridge for two days prior to the accident; that the defendant had sent out the train which was carrying the plaintiff over its road to the place where the slide below the bridge obstructed it, without having previously sent anyone over its road, or made any investigation to ascertain its condition, or the condition of its bridges.   Substantially the state of facts involved in the case at bar has been before this court in the cases of *Knahtla* v. *Or. Short Line Ry. Co.* 21 Or. 136 (27 Pac. Rep. 91), and *Carl-*

son v. *Or. Short Line Ry. Co.* 21 Or. 450 (28 Pac. Rep. 497), and in this same case, upon an appeal from a judgment rendered in favor of the plaintiff in *Conlon* v. *Or. Short Line Ry. Co* 21 Or. 462 (28 Pac. Rep. 501), so that any further statement of the facts in detail is unnecessary.

1.   The defendant claims that under the facts disclosed by the evidence, it was not liable for the injury which the plaintiff sustained, because "the risk arising from the plaintiff's employment, in assisting to remove the obstructions from the track, was not increased by any act of omission or commission of the defendant." But the correctness of this proposition depends upon the fact whether the defendant was negligent in not using proper care before the storm to keep the bridge in repair, or to ascertain the condition of the track or bridge after the storm; for, if the injury which the plaintiff sustained was the result of an omission of the defendant to take proper precautionary measures, either before or after the storm, to lessen or avoid the liability to accident, it did not arise out of any risk which the plaintiff assumed as incident to his employment.   For injuries occurring to other parties by this same accident, this court, in applying the law to a like state of facts in *Carlson* v. *Oregon Short Line Ry. Co.* 21 Or. 450 (28 Pac. Rep. 497), by BEAN, J., said that if "the danger were increased by the negligence of the master to use proper care before the storm to keep the bridge in repair, or to ascertain the condition of the track or bridge after the storm, or to take due and proper precautionary measures to prevent accidents, as the exigency of the situation might require, he did not assume such risks.   The fact that the track was known to be in a dilapidated condition and out of repair, did not relieve the master of the discharge of his duty in the premises.   The deceased could still expect from it the exercise of such care and vigilance, and require it to take such precautionary measures to prevent accidents, as the exigencies of the case, having due regard to the safety of its employés, would suggest to prudent

and cautious men experienced in that particular branch
of railroad business." The risk which the plaintiff
assumed was only such as belonged to the work of a
shoveler engaged to clear slides and other obstructions
from the track. He was not out on the road, as counsel
say, for the purpose "of finding out where the road
needed repairing," but to aid in clearing the track where
it was obstructed by slides. He was not a mechanic or
bridge carpenter, and had nothing to do with the repair-
ing of bridges, nor did he know that any bridges were
out of repair. It may be admitted that if the perform-
ance of his duties had required that he should ride over
the track from place to place, where his services were
needed to clear the track of obstructions, the risk he
assumed included the danger of bridges being under-
mined, or swept out by freshets or floods, when they
occurred from inevitable accident, but not when the
danger might have been ascertained and averted in time
to avoid the injury by the exercise of reasonable care or
of proper precautions.

2. If the bridge was out of repair before the storm,
owing to the gradual undermining of the center bents
from the action of the water for the time indicated by the
evidence for the plaintiff, and the defendant, by ordinary
carefulness and inspection, could have ascertained and
known its condition, and under such circumstances, and
after such an unusual storm, when it knew that its track
was obstructed by a slide below the bridge, and that its
work train must cross it in carrying the shovelers to
their place of service, it was the duty of defendant to send
some one over its track, and especially over this bridge,
to inspect it and ascertain whether it was in a safe condi-
tion, before it sent over it a heavy engine and a caboose
loaded with laborers; or if the center bents were in a
good condition before the storm, and were undermined
and washed out by the freshet after the storm, and the
defendant could have ascertained the weakened and
dangerous condition of the bridge by reason thereof,

after it happened and before the accident, by the exercise of reasonable care or precautions, by sending out a trackwalker on the track, or in sending some one ahead of the train, and did not do so, the risk arose from its negligence, and the defendant would be liable for the injury sustained.

3. In our judgment, the trial court, guided by the principles of law declared in the cases referred to, which involved injuries to other parties by the same accident, properly submitted in its charge all these questions to the jury for their determination. In *Knahtla* v. *Oregon Short Line Ry. Co.* 21 Or. 136 (27 Pac. Rep. 91), the court says: "It had but one trackwalker on this section of the road, whose duty it was to pass over the road during the night, and he had not been over this bridge for forty-eight hours; and we think it was a question for the jury to say whether, under these circumstances, with such extraordinary storms prevailing, it was negligence for the defendant to send out the train upon which the plaintiff was being carried, without making any investigation to ascertain the condition of the bridges over which it was to be carried." And again, in *Carlson* v. *Oregon Short Line Ry. Co.* 21 Or. 450 (28 Pac. Rep. 497), the court says: "Whether the defendant, by the exercise of reasonable care and vigilance, could have anticipated and prevented, or provided against, the accident, and whether it was the duty of the defendant, in the exercise of reasonable care and prudence, under the facts of this particular case, to have sent men ahead of the train on which the deceased was being carried, to inspect and examine the bridge before attempting to go over it with the train, are all questions of fact for the jury." Whether it was a proper precaution, under the facts, to send out a man in advance of the train, was a question properly submitted to the jury. If it was a necessary and reasonable precaution, the plaintiff had a right to assume that the defendant had done it. It was the duty of the defendant to exercise reasonable care, or to take such precautionary

measures as the requirements of the situation demanded; and whether the defendant used such care, or took such precautions as were necessary under the circumstances shown by the evidence, was a question of fact to be submitted to the jury for their determination, under appropriate instructions from the court. The claim of the defendant that the accident was not due to any negligence on its part, but was owing to an unusual freshet produced by an unprecedented storm,—something against which no care or vigilance could anticipate or provide,—was fully met by the instructions of the court. In such case the injury was to be regarded as simply an accident that could not be foreseen by reasonable care and vigilance, and for which the defendant would not be liable. Nor did the court fail in the course of its instructions in respect to the general duty of the master to keep its road in good repair and safe condition, to say that such duty must be considered with some qualification when the road had become dilapidated and out of repair, and was in the process of reconstruction, and the employé engaged in its repair was required in the course of his employment to ride over it, so far as the same was applicable to the facts of this case. After carefully examining the record, it is our judgment that the instructions given by the trial court fully met every aspect of the case as presented by the evidence, and that the jury were properly apprised of their duty in the premises. We shall not, therefore, consider the case further than to say that we have examined the instructions asked by the defendant, and think that the law in them, applicable to the case, is covered by the instructions given by the court.

4. The instructions in this case, however, are open to the criticism suggested by the court in *Knahtla* v. *Oregon Short Line Ry. Co. supra.* They are twenty-six in number, nearly all very long and argumentative, and would encumber many pages to present them. The plaintiff likewise prepared a long series of instructions, which he submitted to the court, and asked to be given. It was

doubtless expected that the charge of the court would be made up from these instructions, as is done in some of our circuits, but the trial court, as we shall suppose, after examining and using them as advisory, proceeded to charge the jury in its own language by a connected series of instructions fairly covering the material issues presented by the case. The counsel for the plaintiff highly commends this practice in the trial court as better calculated to enlighten the jury and to aid them in reaching a right verdict, and in this opinion he is sustained by that eminent jurist, COCKRILL, C. J., who said : "The charge is made up wholly of requests for instructions from the parties, and the two theories of the case presented by them are not so consistent and harmonious as to render it an easy task for the jury to determine where their duty lay. The fault is inherent in the practice of giving in a charge to the jury the requests for instructions prepared by counsel. They are not uncommonly framed with a view of giving the greatest advantage to the side which presents them, and do not in that event tend to lighten the labors of the jury ; and when they are accurately and fairly framed on both sides, and involve no contradictions, the issues are presented in disconnected propositions of law which the jury will find more difficult to comprehend than in a charge presenting all the issues on a single phase of the case together in close contrast, and presenting the whole law of the case as emanating from the court without apparent instigation from either side. What can be a greater paradox in the administration of justice, or more confounding to a jury, than for a court to say to them, as is sometimes done: 'For the plaintiff, the court declares the law to be this; for the defendant, so; and on its own motion, as follows;' as though there were three sides to a legal proposition, from which the jury are at liberty to choose. It is the duty of counsel to present their prayers for instructions in order to aid the court, and to show their position in the case on appeal; but the better rule for the court would be to

treat the request only as counsel's suggestions of what they desire to call the jury's attention to, and to embody no more than the substance of them in the charge. The practice of making up the charge from the requests for instructions prepared by counsel, leads to the constantly recurring argument in this court that the charge to the jury is inconsistent and misleading, and has resulted in the remanding of many causes, and perhaps the miscarriage of justice in many others, by the indulgence of the presumption that the jury was able to reconcile the apparent inconsistencies or penetrate the obscurities of the charge:" *Davis* v. *Railway,* 53 Ark. 129 (13 S. W. Rep. 801).

The judgment is affirmed.