[ Argued February 1, 1893;   decided February 27, 1893.]

## JONATHAN MORRISON *v.* B. C. McATEE, EXECUTOR.

[S. C. 32 Pac. Rep. 400.]

1. NOTICE OF APPEAL — CODE, § 537.— When a ruling of a trial court is challenged as not stating the law applicable to the case, the notice of appeal need not specify the reason why the ruling is wrong — it is enough to point out with certainty what the ruling was.

2. INSTRUCTIONS TO JURY.— It is error to give to the jury inconsistent and contradictory instructions, for the reason that it is impossible to tell which rule the jury adopted, and the error is not cured by the fact that the law was correctly stated in one of such instructions.

3. IDEM — REQUESTS TO CHARGE.— The trial court may either give instructions in the form submitted by counsel, or may consider such requests as expressing the views of the respective parties, and use them in preparing a connected and harmonious charge to the jury; the latter practice is much preferable. *Knahtla* v. *Oregon Short Line Ry. Co.* 21 Or. 137, approved.

4. CONTRACT FOR SUPPORT — DAMAGES FOR BREACH.— The measure of damages against a decedent's estate for a breach of contract, by which deceased agreed to furnish plaintiff with a life support in consideration of such services as he might be able to render, is a sum of money, which, together with reasonable interest and what plaintiff could reasonably contribute to his own support by his labor, would be sufficient to support him from the time of the breach during the remainder of his life, and not such a sum as would give him a reasonable and comfortable support during that time, without taking into account his probable earnings.

5. MORTALITY TABLES — EXPECTANCY OF LIFE.— Standard mortality tables showing the expectation of life at a given age, although competent to show the probable length of life of a given person, are not conclusive, and cannot alone be taken as a correct rule for estimating the length of such person's life.

Wasco County: W. L. BRADSHAW, Judge.

This was originally a presentation to the county court of the claim of Jonathan Morrison against the estate of William McAtee, deceased, after the claim had been rejected by B. C. McAtee, the executor.   The claim was presented on April 17, 1891, and, being disallowed, was then presented to the county court under the provisions of section 1134, Hill's Code, and that court allowed the claim in the sum of one thousand one hundred and twenty-

five dollars, on September 16, 1891. The executor appealed to the circuit court, where the question was tried before a jury in November, 1891, and a verdict returned for Morrison for about fourteen hundred dollars. Judgment being given on the verdict, the executor appeals. Reversed.

*Alfred S. Bennett,* and *J. L. Story,* for Appellant.

*Bela S. Huntington ( Mays & Wilson* on the brief), for Respondent.

BEAN, J.—This is an appeal from a judgment in favor of the claimant, rendered in a proceeding under section 1134 of Hill's Code, to enforce the claim of Jonathan Morrison against the estate of William McAtee, deceased, for an alleged breach of contract made between plaintiff and deceased, by which the latter agreed to support the former during his life, in consideration of such services as he might be able to render. From the claim as presented to, and rejected by, the executor, and which forms the basis of this proceeding, it appears that in April, 1872, the claimant, who was then sixty-one years of age, entered into an oral agreement with the deceased, whereby it was agreed that the claimant should work for the deceased as a blacksmith and general farm laborer as long as he might live or might be able, and, in consideration thereof, the deceased should support and maintain him during the term of his natural life. In pursuance of this agreement, the claimant entered into the service of the deceased, and continued to work for him without any compensation other than his maintenance and support, performing such labor as he was required and was able to perform, until the twelfth day of November, 1890, when McAtee died, leaving a will, but making no provision for the support and maintenance of the claimant, and his personal representatives have failed and neglected to comply with the contract. As the important question on this appeal arises on the instructions of

the court, a discussion of the evidence as introduced on the trial is not essential, further than to say that it tended to show the making of the contract as alleged, performance by the claimant, and the refusal by the executor of the estate to make any definite or permanent provision for the support and maintenance of the claimant, although he is old and infirm and unable to support himself; hence, there was evidence tending to show a breach of contract, and the motion for a nonsuit was properly overruled.

1.    Before considering the other questions, it is proper to advert briefly to the sufficiency of the assignments of error in the notice of appeal.   The following are a sufficient illustration of such assignments for the purposes of this case :   "4. The court erred in sustaining the objection of the claimant to the question propounded for the defendant estate to said witness Jonathan Morrison, upon his cross-examination, which question was as follows : 'Didn't Mr. McAtee set aside provisions enough to support you and Mrs. McAtee?'"   "5. The court erred in overruling the objection of the counsel of the defendant estate to a question asked of said claimant Morrison, which is as follows : 'I will ask you to state whether you have any means by which you can support yourself other than your claim against this estate?' and permitting the witness to answer 'No sir,' over the objection of the defendant estate."   "7. The court erred in instructing the jury that 'where the contract alleged is once shown to exist, the burden of proving that it was abandoned, or that the estate had been released therefrom, is upon the estate before it can be relieved of its liability thereon.'"   "8. The court erred in instructing the jury, 'the measure of damages in this case, if you find that the plaintiff should recover, is such sum as would pay for Morrison's support and maintenance for the time which Morrison would probably live after the death of McAtee as shown by the mortality tables.'"   The contention for respondent is that, although the notice of appeal specifies with reas-

onable certainty the particular rulings of the trial court
which are claimed to have been erroneous, it is insufficient
because it does not also specify wherein, or upon what
ground, it is claimed such rulings are erroneous. The
provision of the statute that "the notice of appeal shall
specify the grounds of error with reasonable certainty"
(Hill's Code, § 537) has been repeatedly enforced by this
court. Whenever the question has been presented it has
always been held that a general assignment of error is
insufficient. The sufficiency of such an assignment was
carefully considered in the recent case of *Herbert* v. *Dufur*,
23 Or. 462 (32 Pac. Rep. 302), and further discussion of
the question is unnecessary at this time. But we have
never held, nor do we think the statute contemplates,
that the notice of appeal shall also specify the particular
reasons upon which it is claimed the ruling of the trial
court is erroneous, when such ruling is challenged on the
ground that it is not the law as applicable to the issues
and facts of the particular case. In such case it is
thought to be sufficient to specify in the notice of appeal
the particular ruling of the trial court upon which the
appellant would rely as error in the appellate tribunal,
without stating the particular reasons for such claim;
and this we understand to be the prevailing practice in
this state. The object of the assignments of error in the
notice of appeal is to notify the respondent and appellate
tribunal of the particular error upon which the appellant
intends to rely on the appeal, so that the respondent may
intelligently prepare his defense, and the court examine
the record. The notice of appeal in this case does specify
the particular errors upon which the appellant intends to
rely upon this appeal, and is, we think, sufficient under
the statute.

2. The charge of the court in this case is made up
wholly from requests for instructions by the parties, and,
as is often the fact in such cases, however careful and
painstaking the trial judge may be, there is an irrecon-
cilable conflict in the instrutions as given to the jury.

At the request of the defendant estate the court instructed the jury that "if you should find for the plaintiff, then you should deduct from the amount otherwise necessary to support the claimant, any amount which he could reasonably earn during the same time for himself." However, in a subsequent detached and unconnected portion of the charge, at the request of the claimant, the jury were told that, if they should find in favor of the claimant, they should "assess his damages at such sum as will give him a reasonable and comfortable support during the probable length of Morrison's life, commencing from the twelfth day of November, 1890, the date of McAtee's death," to which latter instruction the defendant estate duly excepted. These instructions are inharmonious, conflicting, and misleading, and it is impossible to tell which rule the jury adopted in arriving at their conclusion. Whether they assessed the claimant's damages at such sum as would support him during the remainder of his life according to the rule as given at his request, or whether they deducted from the amount necessary for such support his probable earnings, as they were instructed at defendant's request, it is impossible to determine. For this reason, if for no other, the judgment must be reversed. The giving of inconsistent and contradictory instructions is error, because the jury will be as likely to follow the one as the other, and the fact that the law may be accurately stated on one side will not obviate error if thus given for the other party: Thompson, Charging Jury, § 69; *Schneer* v. *Lemp*, 17 Mo. 141; *Toledo Ry. Co.* v. *Shuckman*, 50 Ind. 42; *Clem* v. *State*, 31 Ind. 480; *Quinn* v. *Donovan*, 85 Ill. 194; *Van Slyck* v. *Mills*, 34 Iowa 375; *Davis* v. *St. Louis R. R. Co.* 53 Ark. 117 (13 S. W. Rep. 801).

3. If the trial court prefers to give instructions in the form as submitted by counsel, rather than treat such requests as embodying counsels' views of the law, to be used in the preparation of its charge to the jury, it should be especially careful to harmonize such instructions before giving them. If this is not done, the instruc-

tions, which should be a guide to the jury, only serve to confuse and mislead them, and, as was said by FRAZIER, C. J., in *Clem* v. *State*, 31 Ind. 480, "make the trial by jury a most mischievous institution." The evil arising from such a practice was noted by this court in the case of *Conlon* v. *Oregon Short Line Railway Co.* 23 Or. 499 (32 Pac. Rep. 397), and in *Knathla* v. *Oregon Short Line Railway Co.* 21 Or. 137 (27 Pac. Rep. 91).

4. And further than this, it appears that several of the instructions given at the request of the claimant, were erroneous. Take, for example, the one already set out as to the measure of damages. If, as the evidence tended to show, the claimant, while not able by his work or labor to entirely support himself, was able to do some work which would partly compensate therefor, he would certainly not be entitled to recover as damages the entire amount necessary for his support, with no deduction for his probable earnings. The measure of damages for a breach of a contract of maintenance, as we understand the law, is such a sum as would be a just equivalent for full performance, including prospective as well as past damages: *Fales* v. *Hemmenway*, 64 Me. 373; *Schell* v. *Plumb*, 55 N. Y. 592; *Freeman* v. *Fogg*, 82 Me. 408 (19 Atl Rep. 907). In the case at bar, as the consideration for the contract of maintenance was service by the claimant, the measure of damages for a breach of the contract would be a sum of money which, together with its income at a reasonable rate of interest, and what the claimant could reasonably contribute to his own support by work and labor, would be sufficient to support and maintain him from the time of the breach of the contract during the remainder of his life; and not such a sum as would give him a reasonable and comfortable support during that time, not taking into account his probable earnings.

5. The court also, in another instruction given for the claimant, instructed the jury that the measure of damages "is such a sum as will pay for Morrison's support and maintenance for that time which Morrison would

probably live after the death of McAtee, as shown by the mortality tables." This is not only erroneous for the same reason as the instruction last above referred to, but also because it confined the jury, in determining the probable length of the claimant's life, to the mortality tables introduced in evidence. Standard mortality tables showing the expectation of life of a person of given age, are competent for the purpose of showing the probable length of life of any given person; but, in the nature of the case, cannot be conclusive. They are simply the result of calculations based upon a certain average rate of mortality as shown by experience, and assuming that all of the same age are of equal value. But the constitution, habits, and health of individuals differ essentially, and this must be taken into consideration in estimating the probable length of life of any given person, and therefore no ordinary table of expectation of life, although it may offer much valuable information, can alone be taken as a correct rule for estimating the value of the life of any particular individual: *Scheffler* v. *Minneapolis Ry. Co.* 32 Minn. 518 (21 N. W. Rep. 711).

As the other alleged errors will probably be obviated on another trial, we shall pass them at this time. Judgment reversed and a new trial ordered.

---

[Decided February 27, 1893; rehearing denied July 13, 1893.]