Argued 19 October, decided 4 December, 1905.

## MARKS v. HERREN.

83 Pac. 385.

TRIAL — REFUSING TO GIVE REQUESTED CHARGE ALREADY GIVEN.*

1. A trial court need not give to a jury a requested instruction that has already been substantially given.

For example: The question being whether a wife was bound by her husband's lease of her land to defendant, a request to charge that, if the wife knowingly per-

---

*NOTE.— This rule of practice has been applied in the following Oregon cases :
*State* v. *Brown*, 7 Or. 186, 203 ; *State* v. *Anderson*, 10 Or. 448, 460–462 ; *State* v. *Roberts*,. 15 Or. 187, 197 (13 Pac. 896); *Roth* v. *North Pac. Lum. Co.*, 13 Or. 205, 220 (21 Pac. 842);. *State* v. *Brown*, 28 Or. 147, 165 (41 Pac. 1042); *State* v. *Magers*, 36 Or. 38, 51 (65 Pac. 520); *Savage* v. *Savage*, 36 Or. 268, 278 (59 Pac. 461); *State* v. *Tucker*, 36 Or. 292, 306 (61 Pac. 894); *Lieuallen* v. *Mosgrove*, 37 Or. 446, 453 (61 Pac. 1022); *State* v. *McDaniel*, 39 Or. 161, 184 (65 Pac. 520); *Boyd* v. *Portland Elec. Co.*, 40 Or. 126, 137 (66 Pac. 576); *State* v. *Sally*, 41 Or. 366, 369 (70 Pac. 396); *Crossen* v. *Grandy*, 42 Or. 282, 287 (70 Pac. 906); *Anderson* v. *Oregon R. Co.*, 45 Or. 211, 224 (77 Pac. 119); *State* v. *Eggleston*, 45 Or. 346, 359 (77 Pac. 738); *State* v. *Gray*, 46 Or. 24, 31 (79 Pac. 53); *Barnes* v. *Leidigh*, 46 Or. 43, 46 (79 Pac. 51); *Pacific Export Co.* v. *North Pac. Lum. Co.*, 46 Or. 194, 205 (80 Pac. 105);. *State* v. *Smith*, 47 Or. 485 (83 Pac. 865).— REPORTER.

mitted the husband to hold himself out as her agent as to her land, she would be held to have adopted his acts and be bound by his contracts, and that where one is shown to have been an agent, and continues to act as such within the scope of his former authority, a continuance of his authority is presumed, was properly refused, the court having already instructed that the husband could have been an agent of his wife by his generally transacting business of such character in relation to her land, and that if she gave him general authority, which was generally known, it would be presumed to continue until parties that knew of that authority had actual notice of its cessation.

DEFINITION OF WORD "HABITUALLY."

2. As used in an instruction that in order to be bound by the conduct of an alleged agent the principal must have "habitually" allowed the agent to represent him, and that the agent must have "habitually" acted in similar matters, the word "habitually" does not mean so often repeated as to be a habit, but rather that if the principal ratified all the contracts assumed to have been made by such agent, the agency might be implied, while if any of such contracts had been repudiated, such disavowal would repel such implied agency.

From Clackamas : THOMAS A. McBRIDE, Judge.

Action to recover possession of real property, resulting in a judgment for plaintiff, from which defendant appeals.

AFFIRMED.

For appellant there was an oral argument by *Mr. A. M. Cannon*, with a brief over the name of *Carson & Cannon* to this effect.

I. Where a party asks of the court an instruction that is brief, concise, and states the law correctly as applicable to the facts in dispute, he is entitled to have it given to the jury; and if the court gives the charge in his own words he must, in giving the charge requested, confine himself to that point alone, disencumbered with and disconnected from any other point in the case, nor is he permitted to change its sense or to so qualify it as to weaken its force : *Baltimore & O. R. Co.* v. *Laffertys,* 14 Grat. 478 ; *Conrad* v. *Lindley,* 2 Cal. 133 ; *People* v. *Williams,* 17 Cal. 148 ; *Cohen* v. *Schlick,* 6 Ill. App. 280 ; *West Chicago St. Ry. Co.* v. *Groschon,* 51 Ill. App. 163 ; *Severance* v. *Melick,* 15 Neb. 610 ; *Babbit* v. *Bumpus,* 73 Mich. 340 ; *Parish* v. *Bradley,* 73 Mich. 613 ; *Thompson* v. *Thompson,* 77 Ga. 697 ; *Brink* v. *Black,* 77 N. C. 59 ; *Patterson* v. *McIver,* 90 N. C. 493.

II. The action of the court in telling the jury that where·
an attempt is made to show agency by a course of conduct,
the conduct must be "habitually" indulged in is unwar--
ranted by law and clearly error, for the word has such a
meaning that, as applied by the court below, agency never
could be proven by a course of conduct: *Dove* v. *Nunan*,
63 Cal. 400; *Johns* v. *Johns*, 57 Miss. 530; *Northwestern.*
*Mut. Life Ins. Co.* v. *Muskegon Bank*, 122 U. S. 501 (7 Sup.
Ct. 1221); *Meathe* v. *Meathe*, 83 Mich. 150 (47 N. W. 109);·
*Maca* v. *Handy*, 39 La. Ann. 491.

For respondent there was a brief over the names of *Dim-*
*ick & Dimick*, *G. E. Hayes*, and *Richardson & Richardson*,.
with oral arguments by *Mr. Grant B Dimick* and *Mr. Sam--*
*uel T. Richardson.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an action by Sarah E. Marks against E. C Herren
to recover the possesion of certain real property. The an--
swer admits plaintiff's ownership of the land, denies her
right to the immediate possession thereof, and avers a lease
of the premises from plaintiff's husband, who in making·
the demise acted as her agent. The reply denies the
alleged agency, and, the cause being tried, judgment for
the restitution of the premises was rendered against the·
defendant, and he appeals.

1. The bill of exceptions shows that at the trial the de--
fendant introduced testimony tending to show that John R.
Marks, plaintiff's husband, acted as her agent in selling·
produce received as rent of the demanded premises; that.
he negotiated a sale of a part of her land; that he man-
aged her real property, which facts were generally known;.
and that the defendant, being aware thereof, relied upon
Marks' apparent authority in renting the premises from
him. Based on this testimony the defendant's counsel.
requested the court to give the following charge:

"You are instructed, gentlemen of the jury, that, if the plaintiff knowingly and voluntarily permitted Marks to hold himself out to the world as her agent in the transaction of business respecting her land, she would be held to adopt his acts and be bound by his contracts with any person relying upon the faith of such agency; and it is also a rule of law that where a person is shown to have been the agent of another in the transaction of particular business, and continues to act as such agent within the scope of his former authority, it will be presumed that his authority continues and his action will bind his principal, unless the person with whom he deals has notice that his agency has ceased, or until after a lapse of such a length of time as ought to put a reasonably prudent man on inquiry as to the continuance of such agency. So, in this case, if you should find from the evidence that Marks was transacting the business of the plaintiff connected with this real property, such as collecting rents, selling hops, and negotiating sales of the property, then the defendant would have a right to rely upon his authority if he knew of it, and the plaintiff would be bound by his act of leasing the property to the defendant, unless his authority had ceased, and that fact was brought home to the defendant prior to leasing, and your verdict must be for the defendant."

The court refused to give this instruction, and the defendant was allowed an exception.

In the general charge the court said:

"A party may be held to create an agency in two ways that will bind them: One actually authorizing an agent to do an act; or Mr. Marks could be an agent of his wife by her actually authorizing him to transact this particular business, or generally to transact business of this character in relation to the farm, managing and renting, and collecting rents, and selling property on the farm, and other things of that sort. If she gave him general authority to do that, and his authority was generally known and recognized in respect to similar matters, then it would be presumed to continue until parties that knew of that authority had had actual notice that it had ceased. Or, if she allowed

him to hold himself out as the agent and recognize his authority to such an extent as would lead a reasonable, prudent, and careful man to believe that he actually was an agent, if she allowed him to go ahead and transact business of a similar character habitually in such a way as would lead a reasonable and prudent man to believe that he was her agent in this matter, and he actually did believe that and was misled by her previous habitual course of conduct, then she would be bound by his act the same as if she had actually authorized him. But, in order to be bound, in that way, the conduct—by holding a person out as agent—he must have habitually acted in matters of a similar character."

The substance of that part of the charge requested, preceding the application to the case at bar, is taken from Sackett's Instructions to Juries (2 ed.), p. 65, § 16, and page 58, § 4. An examination of the excerpt taken from the general charge will show that the essential parts of the special instructions requested were given by the court. The rule is well settled in this State that when the trial court is requested to state to the jury the rules of law applicable to the various issue involved, which requests are substantially embodied in the general charge, no error is committed in refusing to give the special instructions requested: *Conlon* v. *Oregon Short Line R. Co.*, 23 Or. 499 (32 Pac. 397); *Morrison* v. *McAtee*, 23 Or. 530 (32 Pac. 400); *La Grande Nat. Bank* v. *Blum*, 27 Or. 215 (41 Pac. 659). The court having given the substance of the instruction requested, no error was committed in refusing to charge the jury as desired by defendant's counsel.

2. The court in several instances in its general charge used the words "habitual" and "habitually," as hereinbefore quoted, to qualify the alleged conduct of plaintiff's husband in dealing with her land, to the frequent use of which words defendant's counsel were allowed exceptions. It was argued that the acts of a person on behalf of another,

when assented to by the latter, warrants the implication
of an agency, without such acts being so often repeated as
to form a habit, and that the court's use of the words com-
plained of was erroneous. In *State ex rel.* v. *Savage*, 89 Ala.
1 (7 South. 7, 183, 7 L. R. A. 426), which was a proceed-
ing to impeach a probate judge for alleged habitual drunk-
enness, Mr. Chief Justice STONE, speaking for the court
upon the merits of the case, said : "Habit is customary
state or disposition, acquired by frequent repetition; apti-
tude by doing frequently the same thing ; usage ; estab-
lished manner. When a person has repeatedly acted in a
particular way, at intervals, whether regular or irregular,
for such length of time as that we can predicate with
reasonable assurance that he will continue so to act, we
may affirm that this is his habit." In *Lynch* v. *Bates*, 139
Ind. 206 (38 N. E. 806), in construing a statute which for-
bade the granting of a liquor license to a person in the habit
of becoming intoxicated, the court say: "The word habit
has a clear and well-understood meaning, being nearly
the same as custom, and cannot be applied to a single act."
In 1 American & English Encyclopedia of Law (2 ed.),
p. 961, the editors of that valuable work, discussing the
authority of one person to act for another, say : "While
agency may be implied from a single transaction, it is
more readily inferable from a course of dealing."

If the definition of the word "habit" as given by the
courts in construing statutes relating to the excessive in-
dulgence of intoxicating liquors is to prevail in the case
at bar, it would necessarily follow that an agency could
not be implied from a single transaction. The words used
by the court in its general charge, to which exceptions
were taken, were evidently intended as synonyms for the
words custom or usage, and were not designed to be ex-
pressive of an appetite which by inheritance is or by ac-
quisition had become almost uncontrollable. Mr. Tiffany

in his work on Agency (section 9), in giving illustrations of an agency arising from an estoppel, says: "If a man allows his servant habitually to buy from a tradesman on credit, his conduct is an implied representation of authority to pledge his credit in similar cases. * * Or, if a merchant is aware that his cashier is in the habit of indorsing and collecting checks without authority in dealing with the bank, and does not notify the bank that the cashier is acting without authority, he will not be allowed to deny the authority." In *St. Louis Nat. Stockyards* v. *Godfrey,* 198 Ill. 288 (65 N. E. 90), which was an action by a locomotive engineer to recover damages for a personal injury sustained while switching cars, it was held that the following instruction stated the rule correctly, to wit: "The jury are instructed that if they believe from the testimony, the rule, or notice of the defendant read in evidence, relating to the use of tracks by crews of the plaintiff's company in entering the defendant's yard from the Terminal Railroad Association yard, was habitually violated with the knowledge and acquiescence of the defendant, or was not enforced as to the switching crew with which the plaintiff worked, then the jury should disregard such notice or rule in considering the whole case." In that case, as also in the illustrations given by Tiffany, to which attention has been called, the word "habitually" was evidently designed as a synonym for usage or a course of dealing.

Whether or not an agency can be implied from a single transaction so as to give it the designation of a usage is not necessary to a decision herein, for the bill of exceptions discloses that testimony was introduced by the defendant tending to show that plaintiff's husband had acted for his wife in more than one instance relating to her real property. The habit or usage to which the court refers evidently meant that if the plaintiff ratified all contracts

47 Or.——39

assumed to have been made with third persons on her behalf by her husband, the agency of the latter might be implied from such course of dealing, without regard to how many times his acts had been affirmed by her; but, if she at any time had repudiated agreements undertaken with third persons by her husband on her behalf, such disavowal would break the continuity of the course of dealing, and repel the implication of an agency arising from her husband holding himself out as her agent. Believing from an examination of the entire charge that the meaning we have ascribed to the words in question was so intended by the court and so understood by the jury, no error was committed in using them in the general charge.

It follows from these considerations that the judgment should be affirmed, and it is so ordered.        AFFIRMED.

---

Decided 21 August, 1906.